# Martin *et al. v.* Berry, Demoville & Co.

*Bill in Equity to have set aside a Conveyance of Land on the Ground of Fraud.*

1. *Fraudulent conveyance; burden of proof on bill filed by creditor.* Where a bill is filed by a creditor to have set aside as fraudulent and void a deed from his insolvent debtor conveying certain lands, and it is alleged and proved by the complainant that his claim against the grantor debtor antedated the conveyance, and that the grantor was insolvent, and that the grantee had knowledge of his insolvency the burden is on the grantee in such conveyance to aver in his answer, and prove by clear and convincing evidence, a valuable and adequate consideration passing from him to the grantor for the lands, in what it consisted, and how it was paid.

2. *Same; sufficiency of evidence.*—In a suit by a creditor to have set aside as fraudulent and void a deed from the complainant's insolvent debtor, a decree granting the relief prayed for, and holding that the deed was in fraud of the grantor's creditors, is sustained by evidence that the complainant's claim against the grantor antedated the conveyance; that the grantor had no other property; that the grantor was the grantee's step-son, and that part of the consideration was the satisfaction of a decree, which the grantee had recovered in the probate court for expenditures made by him for the grantor as *in loco parentis*, and which he had said he would not enforce against the grantor, his step-son; that there was a variance between the consideration of said deed, as averred in the defendant's answer and that proved, and that the grantee therein showed an unwillingness to make a full disclosure of the transaction.

APPEAL from the Chancery Court of Colbert.

Heard before the Hon. W. H. SIMPSON.

On February 12th, 1891, J. R. Martin executed two notes for $113.62, each, payable with interest to E. E.

Martin in three and six months after date, which notes said E. E. Martin, on the same day, for a valuable consideration, assigned to Berry, Demoville & Co., the appellees in this case. On May 15th, 1891, the first note matured, and was not paid; it was duly protested and the maker J. R. Martin notified. On July 10th, J. R. Martin executed a quit claim deed to James W. Williams, his step-father, for a recited consideration of $1,000, conveying all his, Martin's interest in the real estate belonging to the estate of Mary Alice. Williams, deceased, (Martin's mother and William's wife). On August 15th, 1891, the second note matured, was not paid and was duly protested and the maker, J. R. Martin, notified.

On August 17th, 1891, Berry, Demoville & Co. instituted suit in the district court of Colbert county on said notes, and on the 9th day of November, 1891, recovered judgment against J. R. Martin for the sum of $270 debt, and the further sum of $14.10 costs, and a certificate of said judgment was on the same day recorded in the office of the probate judge of Colbert county, Alabama. On November 9th, 1891, the said Berry, Demoville & Co., the appellees, filed the original bill in this case against the appellants, J. R. Martin and James W. Williams, alleging that the transfer by J. R. Martin of all his interest in the real estate belonging to the late Mary Alice Williams, was made for the purpose of hindering, delaying and defrauding the appellees and was without consideration; and that the defendant, James W. Williams, was estopped by his acts and declarations from claiming title to the land; and praying that said conveyance be set aside and annulled as fraudulent and void as against complainants. The other facts of the case are sufficiently stated in the opinion.

Upon the final submission of the cause on the pleadings and proof, the chancellor was of the opinion that the complainants were entitled to the relief prayed for, and rendered a decree declaring the deed of conveyance from Martin to Williams void, and ordering it set aside and annulled. From this decree the respondents appeal, and assign the rendition thereof as error.

WILLIAM RICHARDSON and R. W. WALKER, for appellants.—The conveyance which was attacked could not

[Martin *et al.* v. Berry, Demoville & Co.]

have been a fraud upon the complainants, if at the time it was made James R. Martin was indebted to James W. Williams, in a sum equal to the value of the land conveyed, and the conveyance was accepted in payment of such debt, there being no reservation of benefit .or secret trust in favor of- the grantor.—3 Brick. Dig. 517, §§ 137 *et seq.*, *Wood v. Moore*, 84 Ala. 253 ; *Jefferson Co. Sav. Bank v. Eborn*, 84 Ala. 529 ; *Levy v. Williams*, 79 Ala. 171 ; *Pollock v. Meyer*, 96 Ala. 172 ; *National Bank v. Dickinson*, 107 Ala. 265.

KIRK & ALMON, *contra*.—The complainants' debt having been created and in existence before the conveyance, the burden of proving the consideration, and that it was not materially disproportionate to the value of the property conveyed, rests upon the defendants. When the parties to the conveyance are near relatives, clearer and more convincing proofs are required of the *bona fides* of the transaction than when they are strangers.—*Lehman, Durr & Co. v. Greenhut*, 88 Ala. 478 ; *Marshall v. Croom*, 60 Ala. 127 ; Wait on Fraudulent Conveyances, p. 342. The fact that property is conveyed to a relative in payment of an antecedent debt by one who is otherwise indebted raises the presumption of *mala fides*, and in a suit between a debtor and his creditors casts the burden on the debtor to show the conveyance was made in good faith.—*Calhoun v. Hannon*, 87 Ala. 277.

The conveyance of Martin to Williams has all the badges of fraud known to the law.—Wait on Fraudulent Conveyances, p. 239, § 233.

McCLELLAN, J.—The burden was on Williams, it being alleged and proved that complainants' debt against Martin antedated the conveyance of the latter to him, and that Martin was insolvent to the knowledge of Williams, to both aver in his answer and prove by clear and convincing evidence a valuable and adequate consideration passing from him to Martin for the land, in what it consisted and how it was paid.—*Robinson v. Moseley*, 93 Ala. 70. In recognition and attempted discharge of this burden so far as averment is concerned, Williams set up in his answer that at the time of the conveyance to him he had no knowledge or notice of Martin's indebtedness to the complainants, that Martin

was then—July 10, 1891—indebted to him on a decree rendered by the probate court in the sum, principal and interest, of $467.17 ; the decree without interest being for $383.43 ; that he was not at Tuscumbia, the county seat, when he purchased the land and hence did not know the precise amount of the decree, "but that he agreed to give him a very liberal price for the land, and gave him much more than his interest therein was worth. He agreed to give him and did give him for said interest the amount said James R. Martin owed him with the interest from the 8th day of February, 1889, amounting to $547.17, and his three notes as follows : One for eighty dollars, due January 1st, 1892, now owned by Williams & Turner, one for one hundred and seventy dollars, due 1st January, 1893, now owned by C. F. Turner, and one note for one hundred and seventy dollars, due 1st January, 1893, which last note respondent has since paid, and also paid him forty dollars in cash ; not knowing," the answer proceeds, "at the time said deed was made the precise amount due from said James R. Martin to respondent, the consideration in said deed was put at one thousand dollars, so as certainly to embrace not only the notes and cash the respondent paid him, but also all of said indebtedness." Such is the answer. Now as to the evidence offered to support its averments : It is shown by the respondent that the land was worth not exceeding five hundred dollars, so that if the averments of the answer be true, the respondent paid nearly double its value, and a sum in cash and notes nearly equal to its value, exclusive of Martin's indebtedness to him. But the decree in favor of respondent against Martin is shown by the evidence of the former and the transcript from the probate record to be for an amount just double that alleged in the answer, or $766.43 instead of $383.43. This decree, with interest to the time of respondent's alleged purchase from Martin, would have amounted to over one thousand dollars, and when to this is added the cash and note payments amounting to $460, it would appear that Williams gave nearly $1,500 for land worth not more than $500. The variance between the averment of the answer and the evidence offered for respondent as to the amount of the decree against James R. Martin, is nowhere either in the evidence or in argument attempted to be explained

[Martin *et al.* v. Berry, Demoville & Co.]

or palliated. We call attention to it here merely as one of the sinuosities of the respondent's defense, though it might possibly be given a wider operation in the case as a fatal variance between the affirmative averments necessary to be made in the answer and the proof. But whether the decree was for the one amount or the other, it is clear, both on the answer and the proof, that the respondent paid Martin about the value of the land in cash and notes and in effect presented him with the amount of the decree. Williams was Martin's stepfather, had raised him and regarded and treated him as his own child. Williams told Weakley that Martin was indebted to him in some amount, or might be, for board, lodging, tuition, etc., but that his expenditures on Martin were regarded by him as those. of a father for his child, and he did not claim or intend to receive any remuneration from him. This idea is fully borne out by this land transaction. He substantially paid Martin full value for the 'land in money or its equivalent and at the same time without any consideration therefor entered satisfaction of the decree against him which is alleged to have represented respondent's expenditures for Martin as *in loco parentis*. Williams swears that when he made this purchase from Martin he did not know that the latter was indebted to complainants; but his answer sets forth facts which substantially demonstrate that he had *notice* of such indebtedness, and the evidence of Weakley, which is entitled to much more credit than that of Williams, as well because of its inherent reasonableness and his want of interest in the result of this suit as because of the inherent weakness of Williams' testimony, his failure to remember facts which ought to be fresh in his mind, his naked and unexplained denials, his point blank refusals to answer several pertinent questions and his interest in the result, clearly shows that Williams knew that Martin was indebted to complainants, that the debt was contracted on the faith and credit of Martin's ownership of this land, and that complainants looked to this property as the source of its payment. On these facts, together with the relation that existed between Williams and Martin, Williams' expressed purpose to collect nothing of the indebtedness from Martin to him evidenced by the alleged decree, a purpose which he substantially effectu-

[Fuller v. Gray.]

ated in the land transaction by paying Martin the value of the land in money or its equivalent over and above the amount of the decree, so that there was really no consideration for the satisfaction of the decree, the time at which the land was conveyed to Williams being after the maturity of Martin's first note to complainants, and shortly before the maturity of the second, the fact that Martin had no other property, the dense cloud of suspicion which is cast over the whole transaction by the variance between the answer and evidence as to the amount of the alleged decree and the circumstances attending the alleged rendition and entry of the decree, and the fact that there is manifest reluctance on the part of Williams to make a full, free and fair disclosure of the whole transaction, the conclusion is fairly and satisfactorily deducible that Martin conveyed the land to Williams and Williams accepted the conveyance for the purpose of hindering, delaying and defrauding the complainants in the collection of their debt from Martin.

Upon the foregoing considerations, to which others might be added, we concur with the chancellor, that the conveyance of Martin to Williams is fraudulent and void ; and his decree is affirmed.

Affirmed.