## Brooks *et al.* v. Garner.

No. 1671, Okla. T.   Opinion Filed Feb. 18, 1908.

(94 Pac. 694.)

1.     **PUBLIC LANDS—Town Sites—Deeds of Trustees—Proceedings in Land Office—Appeals.** Neither the Commissioner of the General Land Office nor the Secretary of the Interior can entertain an appeal from a decision of a board of town site trustees appointed in pursuance of Act Cong. May 14, 1890, c. 207, 26 Stat. 109 (U. S. Comp. St. 1901, p. 1463), after a deed to a town lot has been made and delivered, notwithstanding an appeal was pending at the time of such issuance and delivery.   The functions and jurisdiction of that department necessarily close when the title has passed from the government.

2.     **TRUSTS—Constructive Trusts.** One who secures title to property from a trustee, which, under the terms of the trust, should properly go to another, will be deemed, by a court of equity, to hold the same as a trustee for the benefit of the one entitled thereto.   Equity will not permit the aims and purposes of a trust to be violated, and those who participate therein to be gainers thereby, but will invest the trust property in their hands with the same character that it possessed in the hands of the trustee.

3.     **TAXATION—Property Liable—Public Lands Contested Town Lots.** The issuance and delivery of a deed to a lot by a board of town site trustees, appointed in pursuance to Act. Cong. May 14, 1890, c. 207, 26 Stat. 109 (U. S. Comp. St. 1901, p. 1463), render the same at once liable for taxes, as other real property, notwithstanding a contest may be pending between adverse claimants therefor.

4.     **SAME—Sale of Land—Purchase by Interested Party—Effect.** One who is under a moral or legal obligation to pay the taxes is not in a position to become a purchaser at a sale for such taxes; and, if such person permits the property to be sold, and buys it in either in person or indirectly through the agency of another, he does not thereby acquire any right or title to the property, but his purchase is deemed a mode of paying taxes.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County; before C. F. Irwin, Judge.*

Action by James A. Garner against John E. Brooks and others. Judgment for plaintiff, and defendants bring error. Affirmed and remanded, with instructions.

The cause of action herein arose over conflcting claims to lot No. 26, in block No. 5, in the city of Oklahoma City, Oklahoma Territory, at the time of the opening of the territory. The defendant in error, James A. Garner, who will hereafter for convenience be denominated "plaintiff," having been refused a deed to said property by the town site trustees, and the deed having been issued to Seymour S. Price, and by him to M. D. P. Scarborough, his sister, and from her to John E. Brooks, plaintiffs in error, who will hereafter be denominated "defendants," filed this suit for the purpose of having himself declared to be the equitable as well as legal owner of said lot.

The cause coming on for hearing, by agreement of the parties it was referred to Frank Wells, to take testimony and make report of the facts and law and recommendation for judgment. The findings of the referee and his conclusions are as follows:

"(1) The plaintiff herein, James A. Garner, and one J. T. Word were contestants before board No. 2 of town site trustees for the lot in controversy in this case; being lot 26, in block 5, of Oklahoma City. Such town site trustees decided on December 1, 1890, that Word was entitled to a deed for said lot, and that Garner was not an occupant thereof under the intent of the law. (2) On December 10, 1890, Garner appealed to the Commissioner of the General Land Office, who on January 2, 1894, decided that Garner should be awarded the deed to the lot, and made, among others, a finding of fact 'that Garner staked the lot before it was claimed by any one else, and that he occupied the same before any house was built thereon, and afterwards his tenants erected the alley structure, which he took in lieu of rent.' All of the findings of the Commissioner were sustained by some evidence, and on appeal, taken by Word, to the Secretary of the Interior, the Secretary found on April 8, 1895, that the conclusions of fact made by the Commissioner were borne out by the record, and awarded the lot to the plaintiff Garner. (3) That while said

contest was pending on appeal, to wit, on May 7, 1892, said board
of town site trustees executed and delivered to the defendant Sey-
mour Price, a deed for the lot in controversy; said Price being a
grantee of the rights of said Word in said lot. Said deed was
placed on record by Price; and he at once took possession of the
lot, and he and his grantees have ever since held, and now hold,
the same. (4)   On June 8, 1893, said Price conveyed said lot by
warranty deed to his sister, M. D. P. Scarborough, of Quincy, Ill.,
which deed was filed for record March 13, 1895. After the exe-
cution of such deed Price continued, in apparent control of said
lot, to act as agent for his said sister. (5)   On September 27,
1898, Mrs. Scarborough conveyed said lot, by warranty deed, to
one John E. Brooks, which deed was filed for record on October
11, 1898. The said Brooks has been in possession of said property
ever since about the date of such deed. (6)   Soon after Brooks
took possession of said lot, the plaintiff Garner notified him that
he claimed to be the owner of such lot, and that any further pay-
ments made by Brooks on the purchase price of said lot were made
at his peril. At this time Brooks had paid but a small amount on
the purchase price; but Mrs. Scarborough held his notes for the
balance, secured by a mortgage on the lot. The exact amount un-
paid on such notes at the time I am unable to determine from the
evidence, and I am also unable to determine, if it is material,
whether the notes held by Mrs. Scarborough were negotiable.
(7).   On April 2, 1894, the plaintiff commenced case No. 847 in
this court against Seymour S. Price and J. T. Word, asking that
the defendants be restrained from transferring said lot pending
the contest, that the deed from the town site trustees to Price
be canceled, and that the defendants be compelled to account for
the rent of such property. Said case, unless it was prematurely
brought, was pending in said court until after the commencement
of case No. 848, with which case it was then ordered consolidated.
(8)   On September 19, 1896, tax deed was issued for said lot by
John E. Carson, county treasurer, by Charles Seely, deputy, to
A. L. Welsh. Said deed is claimed by plaintiff to be void (a) be-
cause executed and acknowledged by the deputy treasurer instead
of by the treasurer; (b) because the land was not subject to tax-
ation after the year 1893, for which it was sold on account of the
contest pending; (c) because it recites that A. L. Welsh was the
purchaser at the tax sale, when in fact he was assignee of the tax

certificate.  The testimony shows that Welsh never had any interest in or made any claim to this lot, but that, shortly before the deed was due, Price brought the tax certificate to Welsh, and asked him to present it when the time was up and take out a deed in his own name, and to then deed the same to Mrs. Scarborough, who then owned the legal title to the lot, which requests Welsh complied with, and afterwards executed and delivered a quitclaim deed for the lot to Mrs. Scarborough.  (9)    This action was commenced January 23, 1897, to declare a resulting trust, and for an accounting between the parties."

## Conclusions of Law.

"From the foregoing facts, I am of the opinion that:   (1) The conveyance of the tax title to Mrs. Scarborough operated as a redemption, and that the tax title merged in the other title claimed by her.  I am of the opinion that the tax deed was not void on account of not being executed by the county treasurer; but whether it was void on account of the land being subject to taxation for the year 1893 on account of the contest pending in the Department of the Interior I consider a close question, and have not attempted to decide the same, nor the effect of Price having had the tax deed taken in the name of Welsh for the benefit of Mrs. Scarborough, as these two questions become immaterial if the conclusion made above be correct.  (2)    The pendency of the contest over the lot by appeals to the Commissioner of the General Land Office and to the Secretary of the Interior was of itself notice to all persons of the rights of Garner.  The present occupant of the lot, Brooks, had notice, before purchasing, otherwise than by the pendency of the contest in the Land Department, as this suit was commenced January 23, 1897, and he did not purchase until September 27, 1898.  Whether Mrs. Scarborough purchased the property for value, and without any actual notice of the claim of Garner, is not shown by the testimony, and I have not considered the question of whether it devolved upon her or the defendants to show that she was such a purchaser.  If the appeals pending in the Land Department did not constitute notice, the question would then arise whether Mrs. Scarborough was an innocent purchaser and, if so, whether she could convey to Brooks, who had notice, by the pendency of this suit, of all her rights as an innocent purchaser.  For the reasons given above I am of the

opinion that the plaintiff should recover, as prayed for in his petition."

The defendants, on the overruling of this motion for new trial, brought the case on appeal to this court.

*T. G. Chambers* and *J. W. Johnson,* for plaintiffs in error
*J. L. Brown* and *J. H. Everest,* for defendant in error.

DUNN, J. (after stating the facts as above). From the findings of fact and the decision of the referee it will be observed that his conclusion that the plaintiff should prevail in this controversy is based upon three propositions: First. That the Department of the Interior was not divested of jurisdiction on the issuance of the deed to Word, and that it had full authority to determine the controversy. Second. That the pendency of these different appeals was notice to both Price and Scarborough, and that Brooks had notice of the pendency of this action at the time of his purchase. Third. The said parties having notice, their title was not aided by the tax deed secured by Welsh, as it operated as a redemption. The contention of plaintiff is that, when he filed his application for this lot with the town site trustees at Oklahoma City, the tribunal furnished by the government, wherein conflicting claims over lots in the town site were to be determined, he had a right to have the decision of the said board and that of each successive department into which the controversy might go, and that the wrongful action of the board or of any party inducing it, prior to a determination of the suit, to divest itself of title to the property over which the controversy existed, ought not work to his disadvantage and to the advantage of the wrongdoer, and this whether this action arose through mistake of the board or from any other cause. And hence he urges and argues that Word and his successors have no right to take advantage of the action of said board in making a deed to the lot in controversy to Seymour 'S. Price, prior to the final decision in the case. The defendants take no issue upon the proposition that the deed ought not to have been

issued until the conclusion of the litigation; but they contend that, if it was issued, this fact in and of itself concluded the litigation, and that all things else in connection with it were at an end, and that the act of issuing a deed to Seymour S. Price, even though it were involved in a controversy wherein Garner and Word were the parties, was a final conclusion of the controversy, and a judicial determination that Price, the grantee of Word, was entitled to the deed.

Notwithstanding the case of *McDade v. Territory,* 150 U. S. 209, 14 Sup. Ct. 59, 37 L. Ed. 1055, in which it is held that: "The Secretary of the Interior has power to provide for an appeal from the decision of the town site trustees appointed under Act May 14, 1890, c. 207, 26 Stat. 109 [U. S. Comp. St. 1901, p. 1463], in cases of contest between the two claimants of the same lot, and where an appeal has been duly taken from their decision and is pending, a mandamus cannot be issued to compel the town site trustees to execute a deed to one of such claimants in pursuance of their decisions"—still it is the uniform holding of the courts of the United States and of the Department of the Interior, before which these cases are litigated, that the issuance of the deed or patent to the land in controversy during the pendency of the controversy, deprives the department of further jurisdiction over it, puts an end to the controversy in the department, and relegates the parties to the courts for the correction of any errors committed. The case of *Childers v. Cole,* 18 Land Dec. Dep. Int. 602, was one wherein Childers secured a favorable decision from the town site board at Kingfisher, Okla., in a contest over a town lot, whereupon Cole appealed to the General Land Office. During the pendency of the said appeal Childers brought a suit of mandamus against the board, and by this means secured a deed to the lot in question. The merits of the case, by reason thereof, were never passed on; but, the case finally got before the department on the question of the costs before the board. The department held, after citing *McDade v. Territory of Oklahoma, supra:*

"It will thus be seen that the decision of the town site board in contested lot cases is not a finality; but, in the case under consideration, no answer having been made to the writ issued upon the petition for mandamus, a peremptory order issued, under which the lots were deeded Childers. By the issuance of said deed the land passed beyond the jurisdiction of this dpartment, and said case must be considered as finally disposed of, for the purpose of returning the money deposited by Childers, as applied for."

This decision of the Department of the Interior is in harmony with the decision of the Supreme Court of the United States, where similar conditions and questions have arisen. The leading case, and one which finally settled the practice, is *United States v. Schurz,* 102 U. S. 378, 26 L. Ed. 167. In this case Thomas McBride was contesting with the town of Grantsville over a tract of land embraced within the limits of said town, and not at that time subject to his entry. While the contest was pending and undecided, Carl Schurz, who was then Secretary of the Interior, issued a patent to the land to McBride, and the Supreme Court of the United States held in mandamus, compelling the delivery of the patent, that:

"When a patent for a part of the public lands has been regularly signed, sealed, countersigned, and duly recorded, the patentee has a perfect right to the possession thereof. In the progress of the proceedings to acquire, under the laws of the United States, a title to public land, the power of the Land Department over them ceases when the last official act necessary to transfer the title to the successful claimant has been performed."

On page 396 of 102 U. S. (26 L. Ed. 167) the court says:

"But we have also held that when, by the action of these officers (officers of the Land Department) and of the President of the United States, in issuing a patent to a citizen, the title to the lands has passed from the government, the question as to the real ownership of them is open in the proper courts to all the considerations appropriate to the case. And this is so, whether the suit is by the United States to set aside the patent and recover back the title so conveyed, as in *United States v. Stone,* 2 Wall. (U. S.) 525, 27 L. Ed. 163, or by an indivdual to cause the title con-

veyed by the patent to be held in trust for him by the patentee on account of equitable circumstances which entitle the complainant to such relief."

The case of *Moore v. Robbins,* 96 U. S. 530, 24 L. Ed. 848, was one wherein Bunn set up a prior pre-emption right over Moore's purchase of 40 acres of land. The local officers decided in favor of Bunn, whereupon Moore appealed to the General Land Office, which reversed the decision of the register and receiver, and upon this decision a patent to the land was issued to Moore. After the patent was delivered to Moore, Bunn appealed to the Secretary of the Interior, who reversed the Commissioner's decision, and confirmed that of the register and receiver, and directed the patent to Moore to be recalled, and one issued to Bunn. Moore refused to return his patent, and the Land Department did not venture to issue another for the same land. So there was no question but that Moore was vested with the legal title to the land. The syllabus in this case holds:

"A patent for public land, when issued by the Land Department, acting within the scope of its authority, and delivered to and accepted by the grantee, passes the legal title to the land. All control of the executive department of the government over the title thereafter ceases. * * * But, when fraud or mistake or misconstruction of the law of the case exists, the United States, or any contesting claimant for the land, may have relief in a court of equity."

And in the discussion of the case, the court says:

"It would be as reasonable to hold that any private owner of land who has conveyed it to another can, of his own volition, recall, cancel, or annul the instrument which he has made and delivered. If fraud, mistake, error, or wrong has been done, the courts of justice present the only remedy."

The authorities on the proposition that, when the officials of the Land Department have issued a deed or patent, they also lose jurisdiction has been decided too frequently to admit of question, and this jurisdiction appears to be lost just as effectually when

the patent is issued to a wrong person as it is where it is issued to the one who is entitled to it. The reason underlying the rule is, as said in *Moore v. Robbins, supra:*

"The functions of that department necessarily cease when the title has passed from the government. And that title does so pass in every instance where, under the decisions of the officers having authority in the matter, a conveyance, generally called a patent, has been signed by the President, and sealed, and delivered to and accepted by the grantee. It is a matter of course that, after this is done, neither the Secretary nor any other executive officer can entertain an appeal. He is absolutely without authority. If this were not so, the titles derived from the United States, instead of being the safe and assured evidence of ownership which they are generally supposed to be, would be always subject to the fluctuating, and in many cases unreliable, action of the Land Office. No man could buy of the grantee with safety, because he could only convey subject to the right of the officers of the government to annul his title."

We can see no reason why civil courts have not just as complete jurisdiction to determine these controverted questions as the Land Department, when inadvertently or improperly it has been divested of the jurisdiction or authority to do the things which it is constituted to do. *Miller v. Donahue,* 96 Wis. 498, 71 N. W. 900; *Janes v. Wilkinson,* 2 Kan. App. 361, 42 Pac. 735; *City of Oklahoma v. Hill Bros.,* 6 Okla. 114, 50 Pac. 242.

The authorities in an unbroken, uniform line support the proposition that, where a patent is issued to one party when it should go to another, courts of equity will declare a constructive trust, divesting the party wrongfully holding title thereof, and placing it in one who is entitled thereto. Such is the holding in the leading case of *Johnson v. Towsley,* 13 Wall. (U. S.) 72, 20 L. Ed. 485. The court in the syllabus says:

"But courts of equity, both in England and in this country, have always had the power in certain classes of cases to inquire into and correct injustice and wrong, in both judicial and exec utive action, founded in fraud, mistake, or other special ground

of equity, when private rights are invaded. In this manner the most solemn judgment of courts of law have been annulled, and patents and other important instruments issuing from the crown or other executive branch of the government have been reformed, corrected, declared void, or other appropriate relief granted. The Land Office, dealing as it does with private rights of great value, in a manner particularly liable to be imposed upon by fraud, false swearing, and mistakes, exemplifies the value and necessity of this jurisdiction."

In the discussion of the case appears the following:

"And so, if for any other reason recognized by courts of equity as a ground of interference in such cases the legal title has passed from the United States to one party, when, in equity and good conscience, and by the laws which Congress has made on the subject, it ought to go to another, 'a court of equity will,' in the language of this court in the case of *Stark v. Starrs,* just cited, 'convert him into a trustee of the true owner, and compel him to convey the legal title.' In numerous cases this has been announced to be the settled doctrine of this court in reference to the action of the land officers."

See, also, *Twine v. Mollie Carry,* 2 Okla. 249, 37 Pac. 1096; *Paine v. Foster,* 9 Okla. 213, 53 Pac. 109. The case of *Rector v. Gibbon,* 111 U. S. 276-291, 4 Sup. Ct. 605, 28 L. Ed. 427, citing approvingly *Johnson v. Towsley, supra,* says:

"This case is a leading one in this branch of the law, and has been uniformly followed. The decision aptly expresses the settled doctrine of this court, with reference to the action of officers of the Land Department, that when the legal title has passed from the United States to one party, when in equity and in good conscience and by the laws of Congress it ought to go to another, a court of equity will convert the holder into a trustee of the true owner, and compel him to convey the legal title. This doctrine extends to the action of all officers having charge of proceedings for the alienation of any portion of the public domain. The parties actually entitled under the law cannot, because of its misconstruction by those officers, be deprived of their rights. *Townsend v. Greeley,* 5 Wall. (U. S.) 326, 335, 18 L. Ed. 547; *Carpenter v. Montgomery,* 13 Wall. (U. S.) 480, 496, 20 L. Ed. 698; *Shepley v.*

*Cowan,* 91 U. S. 330, 23 L. Ed. 424; *Moore v. Robbins,* 96 U. S. 530, 24 .L. Ed. 848; *Quinby v. Conlan,* 104 U. S. 420, 26 L. Ed. 800; *Smelting Company v. Kemp,* 104 U. S. 636, 26 L. Ed. 875."

So when one who secures title to property from a trustee, which under the terms of the trust should properly go to another, he will be deemed by a court of equity, to hold the same as a trustee for the benefit of the one entitled thereto. Equity will not permit the purposes and aims of a trust to be violated, and those who participate therein to be gainers thereby, but will invest the trust property in their hands with the same character that it possessed in the hands of the trustee. In the case of *Twine v. Carey, supra,* the court says in the syllabus:

"A court of equity has no power to hear and determine any question affecting the title to public lands until the Land Department has determined the matter, and the title has passed from the government. But after the title has passed to private parties, a court of equity will convert the holder of the legal title into a trustee to the true owner, if in equity and good conscience and by the laws of Congress and rules of the department thereunder, it ought to have gone to another."

Also, *Gourley v. Countryman,* 18 Okla. 220, 90 Pac. 427; *Smith v. Townsend,* 1 Okla. 117, 29 Pac. 80.

When the deed was issued herein, it was made to Seymour S. Price as the assignee of J. T. Word. Price was not a settler on the lot, nor was he connected with it in any way, except as a purchaser from Word. Word was not a settler on the lot, nor was he connected with it in any way, except that he likewise held as a purchaser from some one else, so that Price holds whatever right a man would have purchasing the settlement rights of another, presuming in his behalf that any of his grantors were settlers on the lot prior to the issuance of the deed. The deed issued herein, while good as against the government, and divesting it completely of title, created of the holder a trustee for the use of the person ultimately shown to be entitled to it. When the town site board decided the contest between Word and Garner, on December 1,

1890, holding Word entitled to the lot, Garner within due time appealed from this decision. The issuance of the deed while that appeal was pending, and undetermined, before the General Land Office, precluded the department from passing with jurisdiction on the merits of the controversy; and Garner, being denied this right and benefit, ought not in equity and good conscience be in any way prejudiced by the decision of the town site trustees. The deed to Price was issued wrongfully, and in violation of Garner's rights; and Garner ought not lose, and Price ought not gain, by virtue thereof. These propositions we regard as fundamental. In the case of *Rector v. Gibbons, supra,* the court in the discussion thereof, says:

"In no instance, in the legislation of the country, have the claims of an intruder upon the prior possession of others, or in disregard of their rights, been sustained."

And in the case of *Lytle et al. v. State of Arkansas,* 9 How. (U. S.) 314-333, 13 L. Ed. 153, the court says:

"It is a well-established principle that, where an individual in the prosecution of a right does everything which the law requires him to do, and he fails to attain his right by the misconduct or neglect of a public officer, the law will protect him."

In any event the decision of the trustees, if final on the facts found, and not a nullity by virtue of the denial of the right of review by the appellate tribunals is not conclusive on the courts in its conclusions of law based on those facts. *King v. Thompson,* 3 Okla. 644, 39 Pac. 466; *Gourley v. Countryman, supra.*

The trustees in their decision find: "That it does not appear to this board that Garner is or was an occupant under the intent of the law, or that he has any residence now or for the last year in this territory," etc. The undisputed evidence is that Garner settled on the lot April 22, 1889. The exhibits in the record show that Word took from Hollander, and he from McClosky, who held the certificate of the city recorder; and the finding mentioned is based on the failure of Garner to occupy the lot "under the intent

of the law," and not that McClosky, Hollander, or Word were prior settlers. The intent of the law that Garner did not fulfill was a failure of residence, either on the lot, or else in the territory, neither of which was required to hold his settlement and right to the ·property. In the case of *Berry v. Corette*, 15 Land Dec. Dept. Int. 210, the Secretary of the Interior in the syllabus says:

"The claimant of a town lot is not required to maintain an actual personal residence, as in case of a homestead. It is sufficient if he makes a settlement and improvements thereon, though the improvements be occupied by another as the tenant of the claimant."

There is yet another very important misstatement of the law in the opinion, which doubtless affected the result. "The contestee, ·Word, claims under and through McClosky, and has whatever interest in and to said lot that McClosky ever had." The right initiated by settlement is a personal one, and cannot in the face of an adverse claim be sold, and the vendee take the rights his vendor has. Such a sale is an abandonment of the vendor's settlement, as against the adverse claimant. The certificate issued to McClosky is only *prima facie* evidence when there is an adverse claimant. *Bender v. Shimer*, 19 Land Dec. Dep. Int. 363. We therefore hold that the facts as found by the town site trustees do not sustain the legal conclusion reached by them, and hence the same is not conclusive on the court. The uncontradicted evidence taken before the board—and no one denied Garner's prior settlement—and the uncontradicted evidence taken in the trial of this cause in the district court both establish affirmatively that the decision of said trustees was erroneous, and that Garner was entitled, under his prior settlement and improvement, to have the deed delivered to him.

The next question which presents itself to the court is the effect of the deed made by Seymour S. Price to M. D. P. Scarborough, in reference to which plaintiff states in his petition:

"On the 13th day of March, 1895, there came to and was filed in the land records of Oklahoma county, Okla., a deed from Seymour S. Price to the defendant M. D. P. Scarborough, said deed purporting to bear date June 8, 1893, and conveying said lot to the defendant Scarborough; the same being a warranty deed. That said deed was wholly without consideration, and was made and received by said Scarborough with the intent, if possible, to place said land beyond the reach of this plaintiff, and was executed and delivered by said Price, at a time when cause No. 847 was pending, and after summons therein had been served on said Price."

Defendants answer the same as follows:

"Defendants say that on the 8th day of June, 1893, the said Seymour S. Price for a valuable consideration, to wit, the sum of $800, at that time paid to him by the said defendant M. D. P. Scarborough, deeded to the said M. D. P. Scarborough said lot by warranty deed. Defendants deny that said deed was made without consideration, and was received by said Scarborough with intent to wrong or defraud this plaintiff or any other person, but that said deed was executed by said Price and received by said Scarborough in the ordinary course of such business, was a valid transaction and without the purpose to defraud plaintiff or any other person."

The deed of the trustees was made to Price at a time when the contest between Garner and Word was pending before the Commissioner of the General Land Office, and carried with it notice to the grantee of the exact status and condition of the title. He knew or was bound to know that, taking a deed from the trustees as he did, he took it as a trustee himself, bound to account to Garner for the same, in any proper action brought, if Garner was held ultimately to be entitled to it. Price testified in support of the allegations of the answer above set out.

On April 2, 1894, plaintiff brought an action in the district court of Oklahoma county against Seymour S. Price, for the purpose of setting aside the deed from the town site board to him. The deed to Scarborough shows the same to have been recorded on the 8th day of March, 1895, nearly two years after its execu-

tion, and it was the contention of plaintiff that this deed was in fact made after the decision of the Land Department, adverse to Price's grantor, Word, and after the bringing of said suit, which was numbered 847, and was antedated, which accounts for the apparent delay in being placed on record, and for the fact that she was not a party in said suit. From the nature of things the evidence of all these transactions between Price and Scarborough was within their own breasts, and inaccessible to plaintiff. Furthermore, Price was never at any time out of possession of the lot after taking title to it, until he sold it to Brooks, either retaining it as his own property or, as he contends, looking after it as agent for Scarborough. In addition to this it does not appear in the evidence that the grantee was ever in Oklahoma City, or knew aught of the property, or was in any degree familiar with it. She was a nonresident of the territory, and when her title was assailed neither appeared in person to testify, nor did she give her deposition. There appears in the record a notice from the plaintiff to take her deposition, and an effort was made by plaintiff's counsel to prove by Price that he had advised her not to give it. This was objected to by defendants, and objection sustained. Added to all this it appears that Price was a brother to his grantee, and that, after the sale of this land to Brooks, Price had some, if not all, the notes given by Brooks in payment in his possession. Furthermore, it appears that, after Price had sold this land to his sister, they allowed the same to be sold for taxes, and that, when the time had elapsed in which he could take up the tax deed, and some time prior to September 19, 1896, Price delivered the certificate to one A. L. Welsh, who testified:

"He (Price) told me he wanted to assign the certificate of sale to me. He said it was for Mrs. Scarborough, and he wanted me to take it out in my name and just quitclaim to her, and I did so after the tax deed was issued, and I made a quitclaim deed as he says—I think a short time afterwards. I do not remember."

This case pended on the docket of the district court of Okla-

homa county for years, with most voluminous pleadings, clearly setting out in detail every allegation upon which plaintiff relied to recover, all of which impugned the good faith and motives existing between Price and Scarborough; yet she failed, either on the solicitation of plaintiff, or of her own accord, to appear either personally or by deposition, and testify.

With this record before us, the court is driven to one of two irresistible conclusions, first, that the deed to Scarborough was a sham, and the title placed there merely as a matter of convenience by Price to avoid the pending judgment, to which we are most favorable; or, second, that she knew of these circumstances, and her silence and absence, with all adverse presumptions, were better for her than her evidence could have been. In either event, as between the title she holds and that of Garner's his must prevail; for Garner has been guilty of no laches whatsoever. He has been diligent and persistent in the extreme. He has done all and more than he could be called on to do to give notice and to protect his interests. It would seem that the mere statement of facts as found in the record surrounding this case would be sufficient upon which to found this judgment; but, when we add to these facts the presumption raised by the law, as laid down in the authorites, to support them, there can be no question left as to its correctness. It is always the duty of a party to a suit to render the court all reasonable aid possible in arriving at a correct conclusion, and honest litigants observe this rule for their own protection. In the case of *Bastrop State Bank v. Sampson Levy,* 106 La. 586-591, 31 South. 164, the court says:

"Judicial tribunals are established to administer justice between litigants, and the first and most important step to that end is the ascertainment of the truth of the controversies which come before them. It is only when the truth is ascertained that the law can be properly applied in the just settlement of disputes. Litigants owe the duty of assisting in every legitimate way in the elucidation of the truth. When a defendant can by

his own testimony throw light upon matters at issue, necessary to his defense, and peculiarly within his own knowledge, if the facts exist and he fails to go upon the witness stand, the presumption is raised, and will be given effect to, that the facts do not exist. *School Board v. Tromble,* 33 La. Ann. 1073; *Nunez v. Bayhi,* 52 La. Ann. 1719, 28 South. 349; *Pruyn v. Young,* 51 La. Ann. 320, 25 South. 125. Where one of the parties to a suit has more means of knowledge concerning a matter to be proved than the other, the *onus* is on him. *Bowman v. McElroy,* 15 La. Ann. 663; 1 Greenleaf's Evidence, § 79; *Ice Co. v. Ermann,* 36 La. Ann. 841."

In the case of *Brown v. Schock,* 77 Pa. 471-478, the court says:

"He refused to appear, and his refusal is put now on the ground that he was informed by his counsel, and believes himself, that the testimony of his identity was illegal. Supposing that to be an honest opinion, yet it did not detract from the *prima facie* effect of his declining to appear as evidence against him. If he had a strong motive to appear and would not, he leaves himself open to suspicion. The question is not upon his right to stay away, but upon the motive which may have caused his absence. A man of ordinary intelligence must know that his failing to appear when he had a strong motive to appear, would be evidence against him."

In the case of *Union Bank v. Stone,* 50 Me. 595-599, 79 Am. Dec. 631:

"There was evidence proving or tending to prove that a notice of demand and nonpayment had been given the defendant. He had been notified to produce it, and did not. He was present, and not a witness. If he had never received such a notice, he knew it, and, knowing it, would be little likely to omit an opportunity of stating a fact thus conclusively in his favor. The evidence tended strongly to charge him. A word from his lips might exonerate him from all liability. * * * If notice had been received, and the defendant knew it, he might well be silent. The utterances of the truth would establish the plaintiff's claim. * * * If he were a witness, he must either state the truth or a falsehood. If he testified truly, his hope of a successful defense was at an end. The defendant does not offer his own testimony.

He prefers the adverse inferences, which he cannot but perceive may be drawn therefrom, to any statements he could truly give or to any explanations he might make. He prefers any inferences to giving his testimony. Why? Because no inferences can be more adverse than would be the testimony he would be obliged by the truth to give. The fact of not testifying was obvious to the jury. * * * No court could perceive such a fact without attaching some degree of importance, more or less, to its existence, according to the necessity of the testimony and the emergencies of the defense. No judge exists who would not, if the trial had been before him, regard this as a fact bearing on his decision. To direct a jury to disregard it would be to direct them to disregard a fact existent, material, and probative. However much so directed, they could not fail to perceive, and, perceiving, could not avoid regarding it."

See, also, *Trice v. Rose,* 79 Ga. 75, 3 S. E. 701; *Lehman v. Knapp,* 48 La. Ann. 1148, 20 South. 674.

"The nonappearance of a litigant, or his failure to testify as to facts material to his case, and as to which he has especially full knowledge, creates an inference that he refrains from appearing or testifying because the truth, if made to appear, would not aid his contention; and, in connection with an unequivocal statement on the other side, which, if untrue, could be disproved by his testimony, often furnishes strong evidence of the fact asserted." (16 Cyc. 1064.)

As will be observed, the foregoing authorities, when applied to the case at bar, strengthen materially the inferences to be drawn from the evidence which was introduced. In fact the correctness of the inference does not rest upon any judicial opinion, but rests in the common experience of men who know that, when valuable property of a suitor is in litigation, and is liable to be lost, if his title to it be just and honest, he comes quickly and swiftly to testify. He is speedy to get to the forum. He is anxious for a hearing. He is zealous in his efforts to present the good faith of his claims to the court. He is unwilling that any inference be drawn against him by either his absence at the time of the trial, or his failure to give evidence. It needs no authority

to support the proposition that, in a case where his claim is assailed to property of great worth, and he remains silent, his silence in his judgment is better for him than his evidence could be. Courts understand this, and enforce it by establishment of a rule that, where facts are peculiarly within the knowledge of one of the parties, it is his duty, and the moral and generally the legal burden is on him, to disclose them; and his failure to do so will strengthen the proof of his antagonist, and leave his own side devoid of any favorable presumption. In the case of *Harrell v. Mitchell*, 61 Ala. 270-281, the court says:

"The circumstances surrounding the parties, the relationship existing between them, their subsequent conduct, may demand higher and more convincing evidence of the fact of consideration than would be exacted if no relationship existed between them, if there were no circumstances surrounding them exciting just suspicion, and their subsequent conduct was consistent only with a fair sale and conveyance for a real consideration. Bump on Fraud, Con. 96-98; *Hubbard v. Allen*, 59 Ala. 283. In criminal and in civil cases presumptions arise from the connection of parties, the circumstances surrounding them, the motive these circumstances and the connection may create, which become conclusive, if unexplained. When explanation lies within the power of the party, the presumption strengthens, if it is not as full and clear as the party could and ought to have made it. *Hawkins v. Alston*, 39 N. C. 137; *Satterwhite v. Hicks,* 44 N. C. 107, 57 Am. Dec. 577."

See, also, *King v. Jacobson,* 58 Hun, 610, 12 N. Y. Supp. 584.

This suit is one to declare a constructive trust. The facts growing out of legal and actual fraud and, as usual, the evidence thereof are largely in the breasts of the parties perpetrating it. This condition is particularly true in cases where the question of good faith is involved. The plaintiff, by reason of this inherent situation, lacks the power of delving into the minds of the parties and drawing forth physical evidence of the evil motives of his adversaries; and he is thereby driven to the necessity of es-

tablishing it by circumstantial evidence, and by proving the acts which are known in law as badges of fraud. Speaking on this subject, Mr. Wait (Fraudulent Conveyances, § 225) says:

"Badges of fraud are suspicious circumstances that overhang a transaction, or appear on the face of the papers. The possible *indicia* of fraud are so numerous that no court could pretend to anticipate and catalogue them. A single one may stamp the transaction as fraudulent, and, when several are found in combination, strong and clear evidence on the part of the upholder of the transaction will be required to repel the conclusion of fraud."

In the case of *King v. Moon,* 42 Mo. 551-554, the court says:

"While the law will not imply or presume fraud, yet common experience teaches that it is seldom that any direct or positive proof can be obtained in regard to any given transaction, no matter how fraudulent it may be. Fraud, in common with the highest crimes known to law, is commonly made out by circumstantial or presumptive evidence. The very charge implies color and disguise, to be dissipated by *indicia* alone. Per Cowan, J., *Waterbury v. Sturtevant,* 18 Wend. (N. Y.) 353. Fraud may be presumed in equity, but must be proved at law. Therefore courts of equity, it is said, will act upon circumstances as indicating fraud which courts of law would not deem satisfactory proofs; or, in other words, will grant relief upon the ground of fraud established by presumptive evidence, which evidence courts of law would not always deem sufficient to justify a verdict. *Jackson v. King,* 4 Cow. (N. Y.) 207, 15 Am. Dec. 354; 1 Story Eq. Jur. arts, 190-193, and cases cited; 3 Greenl. Ev. art. 254. The range of inquiry in the investigation must necessarily be very extensive, and bring within its scope all the circumstances bearing upon the question"

In the case of *McDaniels v. Perkins,* 64 Iowa, 174 19 N. W. 902, the court says:

"The members of this court have all read the evidence separately, and have reached the conclusion that the plaintiff's allegations are sustained. While no one fact is proven which, taken by itself, would necessarily show fraud, yet we cannot divest ourselves of the impression that a fraudulent result was intended, when we look at the case as a whole."

The same is true in reference to the case at bar. No single

fact in the case would establish the fraudulent character of the transaction between Price and his sister; but the evidence, taken as a whole, drives us irresistibly to the conclusion, as before stated, that the deed to her was a mere sham, or, if not, that she held it with notice, and that her holding was the same as his, to wit, a trustee for the benefit of the party ultimately entitled to it, which in this case was the plaintiff.

There is one other question in the case and that is the effect of the tax deed. We are acquainted with the decision of our own court in the case of *Topeka Commercial Security Company v. McPherson*, 7 Okla. 332, 54 Pac. 489; which holds that:

"The Legislature of this territory has no authority to subject to taxation lots in a government town site, pending the determination of a contest in the Land Department between occupying claimants therefor or until a rightful claimant has acquired a right under the town site laws, and the regulations of the interior department concerning the disposal of lots therein, to a deed therefor. Any proceedings to subject such lots to taxation, or to convey the same for nonpayment of taxes, are void, being in violation of section 6 of the organic act of the territory. (Act May 2, 1890, c. 182, 26 Stat. 84) prohibiting the Legislature from interfering with the primary disposal of the soil."

But in our judgment the same does not apply in this case, as the government divested itself of title to the lot when the deed was made to Price, and it at once became subject to the payment of taxes; but the sale of this lot for taxes, and its redemption by either Price or his sister, will not avail them in this suit. It will have changed in no particular the title which they theretofore held, for:

"It is a general principle that one who ought to pay the taxes on property cannot, by omitting to do so, purchase at a sale of the property for the nonpayment, and thereby strengthen his title. A purchase by one whose duty it was to pay the taxes operates as payment only, and he can derive no benefit, as against a third party, by neglect of the duty which he owed to such party. *Johnston v. Smith*, 70 Ala. 108; *Jacks v. Dyer*, 31 Ark. 334;

*Guynn v. McCauley,* 32 Ark. 97. * * * [Citing numerous cases.] * * * Otherwise expressed, one whose duty it is to pay the taxes upon property cannot be a purchaser thereof at a sale for taxes; for he cannot avail himself of a title growing out of his neglect of duty, and will not be allowed to obtain any title to property, by the purchase of it at a tax sale for taxes which he should have discharged or paid without a sale. *Reily v. Lancaster,* 39 Cal. 354, 356; *Garwood v. Hastings,* 38 Cal. 216. * * * [Citing numerous cases.] * * * Nor can he obtain title to property on which he should have paid the taxes, by allowing it to be sold therefor and buying it from a stranger, who purchased it at the sale. *Coppinger v. Rice,* 33 Cal. 408; *Moss v. Shear,* 25 Cal. 38, 85 Am. Dec. 94; *Voris v. Thomas,* 12 Ill. 442; *Pleasants v. Scott,* 21 Ark. 370, 76 Am. Dec. 403. As said in *Christy v. Fisher,* 58 Cal. 256, 258: 'One who is under a moral or legal obligation to pay the taxes is not in a position to become a purchaser at a sale made for such taxes. If such person permits the property to be sold for taxes, and buys it in, either in person or indirectly through the agency of another, he does not thereby acquire any right or title to the property; but his purchase is deemed one mode of paying the taxes.'" (Note to *Cone v. Wood,* 75 Am. St. Rep. 229.)

The defendant Brooks, having bought after this suit was begun in the district court, in which the title was involved, took with notice, and was bound by the result.

The judgment of the district court is accordingly affirmed, and the case is remanded to the district court of Oklahoma county, with instructions, to require John E. Brooks within 30 days of receipt, by the clerk of said court, of the mandate, to execute to plaintiff, James A. Garner, a good and sufficient conveyance of said lot 26 in block 5, Oklahoma City, Okla., and on his failure to do so that the court proceed as provided in section 391 of the Code of Civil Procedure, chapter 66, art. 17, of Wilson's Rev. & Ann. St. 1903 of Oklahoma.

All the Justices concur.

ON REHEARING.

Opinion Filed Nov. 10, 1908.   Denied.

DUNN, J.   On the 18th day of February, 1908, the opinion of this court was rendered in the case of *John E. Brooks et al. v. James A. Garner*.   A petition for rehearing was filed March 7th, 1908, and while the same was pending the death of one of the plaintiffs in error, John E. Brooks, was suggested to the court, and leave granted on motion, to revive the cause in the name of the heirs and legal representatives of said deceased.   This has now been done, and the case is revived, in the names of Nannie E. Brooks, Moses E. Brooks, and James A. Johnson, who are heirs at law and legal representatives of the said deceased.   Since the filing of the petition for rehearing, the case has again had the careful consideration of the court.

It is urged by counsel in their petition that the court disregarded and set aside the findings of the referee in rendering its opinion herein, and our attention is especially called to the finding of the referee, wherein he states:

"Whether Mrs. Scarborough purchased the property for value, and without any actual notice of the claim of Garner, is not shown by the testimony, and I have not considered the question whether it devolved upon her or the defendants to show that she was such purchaser."

The referee in his finding then continues his statement as follows:

"If the appeals pending in the land department did not constitute notice, the question would then arise whether Mrs. Scarborough was an innocent purchaser and if so, whether she could convey to Brooks, who had notice, by the pendency of this suit, of all her rights as an innocent purchaser."

We found in the decision that the appeals pending in the department did not constitute notice, and in our judgment this con-

clusion is unassailable. The question of whether or not Mrs. Scarborough was an innocent purchaser for value was squarely presented by the pleadings, the plaintiff denying, and the defendant affirming. By the referee's findings, as is seen, the testimony does not show whether Mrs. Scarborough was such innocent purchaser or not, and he did not consider the proposition of whether or not it devolved upon her or the defendants to show that she was such a purchaser. On the reconsideration of this matter, we have investigated this question, and in our judgment the great weight of judicial expression on this proposition placed this burden upon her. In the decision rendered, while we did not find that Mrs. Scarborough had actual notice of the claim of Garner, we did find that, in view of the pleadings, issues, and evidence, it was her duty to have testified, or to have her claim subjected to the unfavorable presumption arising by her failure, and that the burden was upon her to clear up for the court those things which she was in a pre-eminent position to do, and that this burden was not discharged by her. *Weber v. Rothchild,* 15 Ore. 385. This rule is applicable in its full scope in cases of this character where the law places the burden of proof upon the party who holds title to real property which is assailed on the ground of fraud. *Neal v. Crawford,* 144 U. S. 585, 36 L. Ed. 552; *Cincinnati Tobacco Warehouse Co. v. Mathews,* 74 S. W. (Ky.) 242; *Worthy v. Caddell,* 76 N. C. 82; *Morgan v. Bostic,* 132 N. C. 743; *Gordon, Rankin & Co. v. Tweedy,* 71 Ala. 202; *Russell v. Davis, admin.,* 133 Ala. 647; *Martin v. Berry, Demoville & Co.,* 116 Ala. 233; *Miller v Fraley,* 21 Ark. 22; *American Net & Twine Co. v. Mayo,* 97 Va. 182; *Schaible v. Ardner,* 98 Mich. 70; *Latson v. Reed et al.,* 45 Mich. 27; *Sillyman v. King,* 36 Iowa, 207; *Throckmorton v. Rider,* 42 Iowa, 84; *Davis v. Nolan,* 49 Iowa, 683; *Butler v. Thompson,* 45 W. Va. 660; *Knight v. G. & C. Capito,* 23 W. Va. 639; *Lovell v. Payne,* 30 La. Ann. Rep. 511; *Clark v. Depew,* 25 Penn. St. Rep. 509; *Lloyd v. Lynch,* 28 Penn. St. Rep. 419, 70 Am. Dec. 137; *Richards v. Vaccaro,* 67 Miss. 516, 19 Am. St. Rep. 322; *Weber v. Rothchild,* 15 Ore. 385, 3 Am. St. Rep. 162.

In the case of *Weber v. Rothchild, supra,* the Oregon Supreme Court, in the syllabus, speaks as follows:

"Where a deed is attacked for fraud, the grantee, in order prove himself a *bona fide* purchaser, must show that he paid a valuable consideration; that at the time of payment he had no notice of an outstanding equity, or of the fraudulent intent of the grantor, and that he acted in good faith. The same elements which were necessary to constitute a good plea in bar to such cases under the former equity practice are necessary to make a good answer under the Oregon Code. When a deed is attacked for fraud, and the grantee pleads that he is a *bona fide* purchaser for value, such plea is an affirmative defense, casting the burden of proof on him, and the plaintiff need only show the fraudulent intent and purpose of the grantor. When a fact is peculiarly within the knowledge of a party, he must produce the necessary evidence to prove it."

In the case from Mississippi, *Richards v. Vaccaro, supra,* the Supreme Court of that state on this proposition speaks as follows:

"If a transaction is shown to have been made with a fraudulent purpose on the part of the grantor, this makes a *prima facie* case in favor of those who are entitled to attack such deed or transfer, which must be met by counter-proof on the part of the grantee, or those claiming under him, tending to show that the grantee was a purchaser for value, and without notice of the grantor's fraud. While fraud is never to be presumed, yet if a transaction is shown to be fraudulent on the part of one of the actors, then it is not incumbent on the party attacking the transaction to prove the fraud of the other actor claiming under it."

The case of *Letson v. Reed et al., supra,* from the Michigan Supreme Court, concurred in by the eminent jurist, Justice Cooley, in reference to the question of burden of proof in cases of this character, declares the rule to be:

"Purchasers of land which has been fraudulently transferred to their grantor must establish the good faith of their purchase, and it cannot be presumed."

In order for the plaintiff in error to have prevailed in this cause it was necessary that Mrs. Scarborough's title be shown to have been clear and free from fraud, purchased by her, in good

faith, without notice, and for a valuable consideration. This burden was placed upon her by the facts in the case and the pleadings, and the referee, by his finding, affirmatively declares that the same was not shown by the testimony.

.Paragraph 4480 of Wilson's Rev. & Ann. St. of Okl., 1903, provides:

"When the referee is to report the facts, the report has the effect of a special verdict."

Clementson in his Work on Special Verdicts, in chapters 12 and 13, pages 232, 233, and 265, states the rule to be that (p. 232):

"Silence in regard to a material fact raises the presumption that the fact has not been proved and does not exist, and the omission will therefore be regarded as equivalent to an express finding against the party having the burden of proof on such issue, which may entitle the opposite party to judgment."

To the same effect is the holding in the case of *Noblesville Gas and Improvement Company v. Loehr*, 124 Ind. 79, wherein the Supreme Court of that state, in passing upon a proposition similar to this, said:

"A special verdict must contain a finding of the facts, and if any fact essential to support the judgment is not found the judgment must fall. Nothing can be supplied by intendment. A failure to find a fact in favor of a party, upon whom the burden as to such fact rests, is equivalent to finding such fact against him. *Housworth v. Bloomhuff*, 54 Ind. 487; *Buchanan v. Milligan*, 108 Ind. 433; *Town of Albion v. Hetrick*, 90 Ind. 545; *Dixon v. Duke*, 85 Ind. 434; *Vinton v. Baldwin*, 95 Ind. 433."

The opinion rendered decided nothing that was not litigated in the suit by the parties. The referee made the evidence taken part of his report, and, while it was read and commented on, there was no fact material to support the conclusion of the court not found specifically or generally by the referee in his findings, and the fact that we came to the some conclusion to which the referee and the trial court arrived, although for different reasons, or from a recognition of other or different rules of law, is nothing of

which the parties may complain, provided there was no departure from the theory on which the cause was tried.

Numerous tribunals have had occasion to pass upon the rights of the parties in this case. The real question of merit in the case, and the one which should control all decisions, is, who was the first settler on the lot. Two tribunals of the land department, with the facts before them, although without jurisdiction, passed upon it, the referee and the district court passed upon it, as did the Supreme Court of the territory, and on rehearing this court has considered it and passed on it, and each and all have held that Garner was the first settler on the lot and entitled to prevail.

Therefore, finding no error in the opinion heretofore rendered and for the additional reasons stated herein, the petition for a rehearing is denied, and the case is remanded to the district court of Oklahoma county, with instructions to require the heirs and legal representatives of John E. Brooks, deceased, within thirty days of the receipt by the clerk of the said court of the mandate herein, to execute to the plaintiff, James A. Garner, a good and sufficient conveyance to lot No. 26, in block No. 5, in the city of Oklahoma City, Oklahoma, and, on their failure so to do within said time, that the said court proceed as provided in section 391 of the Code of Civil Procedure of Wilson's Rev. & Ann. St. of Oklahoma, 1903.

All the Justices concur.