## GRISON OIL CORP. et al. v. LEWIS.

No. 25271.   Dec. 17, 1935.

Rehearing Denied Feb. 18, 1936.

Twyford & Smith and William J. Crowe, for plaintiffs in error.

W. L. McCann, McLaury & Hopps, and Snyder, Owen & Lybrand, for defendant in error.

RILEY, J. This is an appeal from a judgment and decree, decreeing defendant in error to be the owner of an undivided one-half interest in lots 17 and 18, in block 24, in Phillips and Meads addition to Oklahoma City, except the east ten feet of lot 17. Herein, where lot 17 is described as such, we refer to lot 17, less ten feet off of the east end thereof.

In May, 1906, Guy Blackwelder, being the owner thereof, deeded lots 2, 3, 4, 5, 6, 17, and 18 to James R. Lewis, who was then, and now is, the husband of defendant in error.

Block 24 contains 18 lots. Lots 1 to 16, inclusive, run north and south and face East First street on the north. Lots 17 and 18 run east and west, being divided from lots 1 to 19 by an alley running east and west, and just north of the right of way of the C., R. I. & P. Railway. Block 24 lies between Durland avenue on the east and Byers avenue on the west.

The consideration for the deed was $900. $500 was in cash, and $400 was by way of the assumption of a mortgage covering said lots.

May 5, 1906, James R. Lewis, joined by his wife, defendant in error, conveyed said lots to J. L. Wilkin.

On May 1, 1923, J. L. Wilkin conveyed lots 17 and 18 to F. B. Courtney.

On the ____ day of December, 1919, the county treasurer issued a resale tax deed purporting to convey to J. L. Wilkin lots 17 and 18, as having been sold to Oklahoma county at a tax sale held the first Monday in November, 1917. Said resale tax deed was filed for record February 4, 1920.

August 20, 1931, F. B. Courtney executed an oil and gas lease covering the property here involved to H. I. Grimes and A. R. Jameson, who later assigned the lease to the Grison Oil Company. James R. Lewis executed a deed conveying lots 17 and 18 to plaintiff, Sarah F. Lewis. This deed was dated September 7, 1912, and was filed for record January 20, 1914.

This action was commenced February 23, 1931, by Sarah F. Lewis, to establish her claim to ownership of an undivided one-half interest in and to lots 17 and 18, and to quiet her title thereto, and to cancel of record the deed from J. L. Wilkin to F. B. Courtney, the oil and gas lease above mentioned and the assignment thereof in so far as they affected her alleged one-half interest in and to said lots, and also to cancel the resale tax deed above mentioned.

She alleges in her petition in substance that the deed from James R. Lewis and herself to J. L. Wilkin was in fact a mortgage given to secure the repayment of the sum of $500, which Wilkin furnished for the purchase of the lots from Guy Blackwelder; that said indebtedness was all paid from the proceeds of the sale of lots 2, 3, 4, 5, and 6, except about $85; that thereupon J. L. Wilkin and James R. Lewis entered into an agreement whereby Wilkin was to and did cancel the balance due on the note, and to pay said James R. Lewis the sum of $100 for an undivided one-half interest in said lots 17 and 18. That said note was surrendered and the $100 was paid, but that Wilkin had never executed a deed back to Lewis for said one-half interest. That plaintiff believed at the time

that Wilkin had executed and did convey said interest, but the record reveals that no such deed had been placed of record; that at the time Wilkin executed the deed to Courtney, he, Wilkin, was the owner of an undivided one-half interest therein, and that plaintiff was the owner of the other one-half interest; that she had continuously, after September 7, 1912, been in the open and notorious possession of the undivided one-half interest in said lots claimed by her; that the resale tax deed is void, among other reasons, because of the fact that said deed was taken by Wilkin at a time when he and plaintiff were owners in common of said lots 17 and 18.

She prays for a reformation of the deed from Wilkin to Courtney so as to make it convey only the one-half interest which she claims Wilkin owned.

Defendant Courtney answered expressly denying the execution of all instruments under which plaintiff claims title, and expressly denies the allegations of agency and authority contained in plaintiff's petition, and affirmatively alleged in substance that he was in fact the purchaser of lots 17 and 18 at the resale mentioned, and that he went into possession of said premises immediately after the issuance of said resale tax deed, and had remained in possession ever since. He further alleges that for convenience he made the bid upon which the resale deed was based in the name of J. L. Wilkin; that thereafter he discovered that Wilkin was the owner of record at the time said resale tax deed was issued, whereupon he caused Wilkin to convey to him the title acquired by him, and also the record title, for which he paid a valuable consideration without notice of any claim of plaintiff; and that he is an innocent purchaser in reliance upon the records of the county clerk and was without actual or constructive notice of any right, title, claim, interest, or demand of plaintiff.

He then pleaded the statute of limitation as provided by section 9746, C. O. S. 1921, and by the same section as amended by chapter 158, S. L. 1923, and also as provided by subdivisions 3, 4, and 6 of section 183, C. O. S. 1921.

He further pleaded that he has paid all taxes on said premises during the time of his alleged occupancy, and that he had caused lasting, valuable, and expensive improvements, such as derricks, and other things used in drilling oil wells, to be placed upon said premises at an expense of approximately $125,000, all with the full knowledge of plaintiff, and without objection being made by her, whereby, he asserts, plaintiff is estopped by her laches and acquiescence in the premises.

The answer of defendant Grison Oil Company was substantially the same as that of Courtney. Both prayed that their respective titles be quieted.

Issues were joined by reply and amended reply.

During the trial it developed that F. B. Courtney had no actual interest in the matter whatever and that the record title he held was in trust for E. A. Barnes, who it appears was his uncle. Thereupon an amendment to the answer of F. B. Courtney was filed alleging in substance that at the 1919 resale for taxes the purchase of said lots was made by E. A. Barnes, and that he immediately went into possession of said lots; that the bid was made and the deed was taken in the name of J. L. Wilkin, and that on the 16th day of October, 1922, said E. A. Barnes paid to J. L. Wilkin a valuable consideration for the record title then standing in the name of J. L. Wilkin, and caused the conveyance to be made to defendant Courtney, who held the same in trust for E. A. Barnes.

Both parties requested the court to make separate findings of fact.

Nearly 1,000 pages of evidence was taken, and at the close thereof the trial court made findings of fact substantially sustaining all of the plaintiff's allegations and claims, and entered a judgment and decree accordingly, from which judgment and decree defendants prosecute their appeal.

The first proposition presented is that the resale tax deed was fair on its face, valid, and extinguished all other titles.

The trial court found as a fact, and the evidence shows, that at the resale Barnes was the actual bidder, bidding in the name of J. L. Wilkin; that when the resale deed was issued it was made to J. L. Wilkin.

Defendants cite a number of cases which they contend hold that a resale deed such as here involved is not void upon its face. They contend that if the deed be not void upon its face, their title is good thereunder because no action was brought to set aside for more than seven years after said deed was placed of record. All this seems to be directed to the holding of the court that the deed is void upon its face. But it will be observed that the trial court held that the deed was ineffective as against Mrs.

Lewis upon two grounds: First, because J. L. Wilkin was a tenant in common with plaintiff, who was his cestui que trust. That is to say that Wilkin held the legal title as to the one-half interest in trust for plaintiff.

Defendants cite no authority contrary to the holding of the trial court on this proposition.

There are many cases which hold, and it seems well settled, that where one person is placed in such relation to another that he becomes interested for him or with him in any subject of property he is prohibited from acquiring rights in such property antagonistic to such other person.

The reason for the rule is well stated in Clements v. Cates (Ark.) 4 S. W. 776.

In Brooks v. Garner, 20 Okla. 236, 94 P. 694, it is held:

"One who is under a moral or legal obligation to pay the taxes is not in a position to become a purchaser at a sale for such taxes; and if such person permits the property to be sold and buys it in either in person or indirectly through the agency of another, he does not thereby acquire any right or title to the property, but his purchase is deemed a mode of paying taxes."

There is evidence, however, tending to show that Barnes was the real purchaser and Wilkin merely loaned him the money. But he not only loaned his money, but loaned his name as well. In addition thereto he seems to have taken some $290 profit out of the whole transaction. If it be true that Mrs. Lewis was then a tenant in common with Wilkin, and that Wilkin held the record title to her undivided one-half interest in trust for her, then Wilkin violated his trust in attempting to acquire such title for himself or for another through him, and she was not divested of her interest by such acts.

We deem it unnecessary to consider whether or not the deed was void upon its face.

The next proposition presented is that the findings of fact upon which the judgment and decree is based are contrary to the clear weight of the evidence.

This proposition requires an examination of all the evidence covering, as stated above, nearly 1,000 pages in the record. To set out the evidence of the several witnesses even in substance would require entirely too much space.

There can be no doubt but that Lewis purchased the lots from Blackwelder and that Wilkin furnished the money necessary to pay therefor, above the amount of the mortgage assumed, and that Lewis deeded the lots to Wilkin. If this deed was in fact a mortgage, then Lewis continued to hold the equitable title. It is shown that he, Lewis, found purchasers for the lots other than 17 and 18, and when they were sold the money received therefor was used, so far as necessary, to pay off and discharge the mortgage. It also appears that these other lots brought enough, after payment and discharge of the mortgage, to pay Wilkin all the money he had furnished except about $85. Serious question arises over the alleged agreement between Wilkin and Lewis that Wilkin was to discharge the balance of the indebtedness, surrender Lewis' note and pay him $100 for an undivided one-half interest in the remaining lots (17 and 18).

Wilkin already held the legal title to these lots. He never executed any deed conveying back to Lewis the legal title to an undivided one-half interest which he claimed. There is abundant evidence that Lewis continued to exercise dominion over the lots, and had possession thereof down to September, 1912. He built three small houses, or "shacks," thereon, and rented them and collected the rent. He placed the properties with a rental company, and this same company continued to collect the rent in the name of Lewis even down to as late as 1930. There is abundant evidence to that effect.

There is also evidence, if the witness Lewis was competent, as to the agreement between Lewis and Wilkin above referred to.

There is much conflict in the evidence as to who had actual possession after the resale tax deed was issued. Both sides claimed that they had possession by or through tenants, mostly Negroes, during this time. But we consider the greater weight of the evidence on this question is on the side of plaintiff and in accordance with the findings of the trial court.

It cannot be said that the findings of fact are contrary to and against the clear weight of the evidence. On the other hand, the record shows, as we view it, that the findings of fact are supported by the weight of the evidence, if the witness James R. Lewis was a competent witness to testify as to certain matters.

It is conceded that J. L. Wilkin died some years before this action was commenced, and it is earnestly contended that James R.

Lewis was disqualified as a witness to testify concerning certain transactions had by him with Wilkin in his lifetime, and this question is presented under the third proposition submitted by defendants, and particularly as to the matter of the deed from Lewis and wife to Wilkin being merely a mortgage to secure the money loaned by Wilkin to Lewis to purchase the lots from Blackwelder, and also as to the manner in which said mortgage, if the deed was in fact intended only as a mortgage, was satisfied.

Lewis' competency as a witness as to these matters is challenged under section 588, C. O. S. 1921 (section 271, O. S. 1931).

It being shown that James R. Lewis is the husband of plaintiff, his competency as a witness in her behalf is also challenged under subdivision 3, sec. 589, C. O. S. 1921 (sec. 272, subd. 3 O. S. 1931).

Lewis testified, by deposition, that when he bought the lots from Blackwelder, Wilkin furnished the money; that the deed from Lewis and wife to Wilkin was given for the purpose of securing the debt, evidenced as he said by a note in the sum of $500; that after the lots, other than 17 and 18, were sold by him (Lewis) the money received therefor was used first in discharging the mortgage that was against the lots when he bought them, and the balance was applied on his note to Wilkin, which paid it all but about $85; that it was then agreed that lots 17 and 18 should not be sold, and that he, Lewis, and Wilkin entered into an agreement whereby Wilkin was to have an undivided interest in lots 17 and 18, for which he was to pay Lewis the sum of $100, and cancel and surrender the note upon which Lewis then owed him the sum of $85. That Wilkin did pay him the $100, and surrender up the note, but for some reason no deed was executed conveying back to Lewis the legal title to the undivided one-half interest to which he held the equitable title.

The first clause of section 588, C. O. S. 1921, among other things, provides:

"No party to a civil action shall be allowed to testify in his own behalf, in respect to any transaction or communication had personally by such party with a deceased person, when the adverse party is the executor, administrator, heir at law, next of kin, surviving partner or assignee of such deceased person, where such party has acquired title to the cause of action immediately from such deceased person."

Lewis is not a party to this action, and was not testifying in his own behalf. He was not disqualified under the first clause of said section. Defendants acquired whatever title they had directly from J. L. Wilkin. Plaintiff acquired whatever title she had, not from Wilkin, but directly from her husband, or together with an alleged arrangement between her and her husband to the effect that early in their married life they had agreed that whatever property they or either of them should acquire during their married life should be owned by them in equal parts.

The second clause of section 588, supra, is:

"Nor shall the assignor of a thing in action be allowed to testify in behalf of such party concerning any transaction or communication had personally by such assignor with a deceased person in any such case."

Does that clause disqualify Lewis as a witness? It seems clear that it does. In order for plaintiff to recover it must be shown that James R. Lewis retained the equitable title to said property when he and his wife deeded the lots to Wilkin in 1906. That could have been done only by and through a transaction had personally by Lewis with Wilkin. If that had been done and James R. Lewis had not thereafter conveyed his interest and he, instead of his wife, were suing to establish the title, he, Lewis, would certainly be disqualified to testify in his own behalf concerning such transaction. The same is true concerning the alleged transaction whereby Lewis is said to have sold an undivided one-half interest in lots 17 and 18 to Wilkin. That, if done, was by means of a transaction had personally by Lewis with Wilkin.

In order for plaintiff to recover an undivided one-half interest, it must appear that she acquired the interest, if any, of Lewis in the lots. It may be that by the original agreement between Mrs. Lewis and her husband that they were to own all property acquired by either, or both, equally, she owned an undivided one-fourth interest in the lots, but the other undivided one-fourth interest must have come from Lewis. The record shows that he did deed the property to her in 1912. Therefore, he, Lewis, was the assignor, in part at least, of the equitable interest in the lots which plaintiff sought to establish and recover. Courtney, as trustee for Barnes, acquired the interest claimed by defendants directly from Wilkin, so he was the adverse party and also assignee of Wilkin, the deceased person.

It is quite clear that James R. Lewis comes within the term assignor as used in

the second clause of section 588, supra. Said clause says the assignor shall not be permitted to testify in behalf of "such party." The words "such party," as there used, must mean any party claiming adversely to the assignee of the deceased person. If so, then Lewis was clearly incompetent to testify in behalf of his wife, his own assignee, concerning transactions personally had by him with the deceased person relative to the title to the property involved.

As stated above, it is also contended that James R. Lewis was incompetent to testify on behalf of his wife under subdivision 3, section 589, C. O. S. 1921.

In general, where the record discloses that the husband was acting for the wife's best interest and for the protection of her interest and with the knowledge of his acts in her behalf, and the wife ratifies and accepts the benefits thereof, it may be said the husband was acting as agent for the wife in such transactions and is competent to testify in regard thereto. In such cases it is not essential that a specific contract or agreement of agency be shown. Husband and wife have such interests in common that the one, in the absence of the other, and in many instances in the presence of the other, may act for each other as agent without any specific authority from the one to the other. Under the record in this case, it appears that in most matters about which Lewis testified he was not disqualified as a witness under section 589, supra, in that he was acting for and on behalf of his wife in said matters.

But it appears that in the case of plaintiff, in so far as the question of whether the deed from James R. Lewis to Wilkin was an absolute conveyance or a mortgage only, depends largely upon the testimony of James R. Lewis. He was incompetent to testify concerning that transaction, because he was the assignor of the equitable interest, if any was retained, to his wife, who is the plaintiff herein, and an opposite party to the assignee of Wilkin under the deed from Wilkin to Courtney.

Without competent evidence by a competent witness on this important phase of the case, the judgment obtained by plaintiff cannot stand.

Upon another trial evidence may be produced from other sources which, coupled with the fact that the evidence tends strongly to sustain plaintiff's contention that possession was retained by Lewis and

plaintiff through their tenants, may be sufficient to establish plaintiff's claim.

The judgment is therefore reversed and the cause is remanded, with instructions to grant a new trial.

McNEILL, C. J., and WELCH, PHELPS, and GIBSON, JJ., concur.