O'HORNETT v. THORNBURGH.

No. 32112.   April 16, 1946.

*168 P. 2d 114.*

W. E. Foster and E. W. Smith, both of Henryetta, for plaintiffs in error.

Robert R. Smith, of Okmulgee, for defendants in error Mac Thornburgh and Mary Thornburgh King.

W. A. Barnett and Carland Smith, both of Okmulgee, for defendant in error John T. Cole.

OSBORN, J. This is a suit brought by the plaintiffs, Mac Thornburgh, Mary Thornburgh King, and John T. Cole, against the defendants, Carl J. O'Hornett, H. C. Wynne, and Ramona Wynne, his wife, to quiet title to the coal and coal mining rights under certain lands in Okmulgee county. The trial court

rendered judgment for plaintiffs, and defendants appeal.

The lands involved were, prior to the 1939 tax resale in Okmulgee county, owned by defendant O'Hornett, and the coal and coal mining rights thereunder were owned by Mac Thornburgh, Helen Thornburgh O'Brien, and Mary Thornburgh King, who are referred to in the record as the Thornburgh heirs. O'Hornett was a resident of Tulsa. H. C. Wynne was a resident of Henryetta, near which city the lands in question were located, and it is admitted that prior to the 1939 tax resale he was the agent of O'Hornett in looking after O'Hornett's property and interests in and around Henryetta. All the property in question was carried on the tax rolls as the property of O'Hornett, and was included in the 1939 resale. At the resale a part of the property was bought in by H. C. Wynne and by him deeded to O'Hornett on July 18, 1939. The remaining part was bought in by the county, deeded by the county to one Lucas in November, 1939, and by Lucas deeded to O'Hornett in January, 1940. Thereafter O'Hornett deeded the property to H. C. Wynne and Ramona Wynne, the deed being recorded July 15, 1941. In this deed O'Hornett reserved title to the coal, oil and gas and all minerals. Thereafter a correction deed from O'Hornett to H. C. Wynne and Ramona Wynne was recorded on August 24, 1943. This last deed reserved to O'Hornett only the oil and gas and oil and gas mining rights, and recited that it was a correction deed.

The trial court made findings of fact and conclusions of law. It found that H. C. Wynne, in taking resale deeds to a part of the land and in procuring the purchase of the remainder by Lucas at county commissioners' sale, was acting as the agent of O'Hornett, the former owner, and that such purchases, being made for O'Hornett's benefit, constituted a mode of paying the taxes and did not divest the plaintiffs of title to the coal and coal mining rights.

It concluded as a matter of law that the taking of the tax titles by Wynne

and Lucas and the subsequent conveyance of the property to O'Hornett amounted to a mode of paying the taxes for which O'Hornett was primarily liable and which it was his duty to pay.

The decisive question presented is whether H. C. Wynne, in taking the resale deeds and in procuring Lucas to take the county commissioners' deeds, acted for himself or as the agent of O'Hornett. If, as the trial court found, he acted as O'Hornett's agent, then, under the decisions of this court in Burnett v. Cole, 193 Okla. 25, 140 P. 2d 1012, Grison Oil Corp. v. Lewis, 175 Okla. 597, 54 P. 2d 386, and Brooks v. Garner, 20 Okla. 236, 94 P. 694, the transaction amounted to a payment of the taxes by O'Hornett, and plaintiffs were not divested of their title.

Defendants contend that the finding of the trial court that Wynne acted as the agent of O'Hornett is clearly against the weight of the evidence. Both Wynne and O'Hornett testified that Wynne acted for himself and that O'Hornett had no interest in the taking of the resale deeds and the county commissioners' deeds. Both admitted that prior to the 1939 resale Wynne acted as O'Hornett's agent in connection with the lands involved, but testified that before the resale O'Hornett advised Wynne that he would not pay the taxes on the lands, but would let them be sold at the resale to be purchased by anyone who desired to purchase them. They explained the subsequent transfer of the property to O'Hornett as having been made because Wynne was involved in a lawsuit arising out of an automobile accident, and placed his property in O'Hornett's name to avoid the danger of its being levied upon in the event a judgment was obtained against him in such action. An unrecorded written agreement between them to this effect was introduced in evidence. Both testified that Wynne voluntarily gave to O'Hornett the oil and gas mining rights under the land, and that O'Hornett paid him no consideration therefor. On the other hand, Mac Thornburgh testified that he was the only one of the Thornburgh heirs re-

siding in that vicinity, and that he was looking after the coal interests of the heirs; that prior to the resale he consulted Wynne, whom he knew to be O'Hornett's agent, with reference to the land being sold for taxes, and was advised by Wynne that he and O'Hornett expected to and would take care of the taxes, but that it might be nceessary to buy the property in at the resale, either in Wynne's name or in the name of some third party, in order to avoid the payment of excessive taxes; that he conveyed this assurance to his co-owners and did not attend the resale or take any steps to protect the coal interests therefrom.

Agency is a question of fact which may be proved by circumstantial evidence. Springer v. Cobb, 132 Okla. 11, 268 P. 1111; Catlin v. Reed, 141 Okla. 14, 283 P. 549.

The trial court heard the witnesses testify and observed their demeanor while on the stand. Evidently he based his findings on the peculiar facts and circumstances of the entire transaction. In so doing, we think he was justified. The course pursued by defendants, as shown by the record, followed the pattern which Wynne had outlined to Mac Thornburgh prior to the resale. The coal interests were apparently of considerable value, and the surface and oil and gas mining rights were, according to O'Hornett, of little value. It is significant that in his first deed to Wynne, O'Hornett reserved the coal, while in his second deed, made two years later, he reserved only the oil and gas. It is also peculiar that Wynne would voluntarily make a present to O'Hornett of the oil and gas mining rights under the land, and that O'Hornett admitted ownership of such rights by reason of that gift, although he testified that they were of no value. The written agreement between O'Hornett and Wynne, while apparently binding upon both of them, was not recorded. When all the facts and circumstances are taken into consideration, the trial court was justified in believing that the entire transaction was for O'Hornett's benefit, at least to

the extent of enabling him to retain the oil and gas mining rights under the land, and that Wynne was acting for and on O'Hornett's behalf. We conclude that the finding of the trial court that Wynne was the agent of O'Hornett in the transaction is not clearly against the weight of the evidence.

Affirmed.

GIBSON, C. J., HURST, V. C. J., and RILEY, BAYLESS, CORN, and DAVISON, JJ., concur.