## BELL v. TROSPER.

No. 27827. Feb. 1, 1938.

Rehearing Denied March 22, 1938.

Gasper Edwards, for plaintiff in error.

I. L. Harris and Ted R. Elliott, for defendant in error.

RILEY, J. Plaintiff in error commenced this action in the district court of Oklahoma county on November 12, 1935, alleging in substance that on July 1, 1924, she entered into a written agreement with defendant, Clarence E. Trosper, for the purchase by her from defendant of a lot in Oklahoma City; that by the terms of said contract she was to pay for said lots the sum of $668.38, payable $50 in cash and $10 per month, beginning September 1, 1924, with "interest at the rate of 8 per cent. per annum, payable semi-annually from date until paid, interest to become as principal and bear the same rate of interest."

She alleged, in substance, full compliance with the contract and full payment of all money due defendant thereunder and demand for conveyance of the lot as provided in said contract and refusal of defendant to convey. She prayed for judgment for specific performance.

Plaintiff was referred to in said contract as second party and defendant was referred to as first party.

The contract, among other things, provided:

"Said second party agrees to insure the

buildings on said premises for the benefit of the party of the first part and to maintain such insurance during the existence of this contract. Said second party agrees to pay all taxes and assessments lawfully assessed on said premises before delinquent."

The other provisions concerning possession of the property, the effect of failure to pay or insure, are not here in controversy.

Defendant answered, admitting the execution of the contract as alleged. He denied full payment as alleged by plaintiff and affirmatively alleged that there was an unpaid balance on the contract in the sum of $286.78. He offered, on payment of said sum, to convey as provided in said contract.

By way of cross-petition he alleged a balance due under said contract as of July 1, 1935, of $82.80, on the principal, and $3.31 interest, and that no payment had been made by plaintiff since June 1, 1931; that plaintiff had failed to pay the taxes on the property as she had agreed to do in her contract, and that defendant had been compelled to purchase tax sale certificates on said property in the total sum of $191.42, and again tendered a deed of general warranty upon condition that plaintiff pay said balance due and the taxes and assessments paid by defendant.

Plaintiff by reply alleged that all payments legally due had been made, and that a part of the tax sale certificates alleged to have been taken up by defendant were for certain alleged void paving tax assessments, and that her contract called for payment by her of only such taxes and assessments as were legally levied on said property.

The controversy is principally over the payment of paving tax assessments.

At the trial the evidence was to the effect that the only payments made by plaintiff after the initial or down payment of $50 were as follows: $30 in 1924, $70 in 1925, $65 in 1926, $115 in 1927, $95 in 1928, $105 in 1929, $93 in 1930, $10 in 1931, $95 in 1932, $49 in 1933, and $20 in 1934, making a total of $887 paid on principal and interest.

The evidence does not show in which months the several payments were made. Defendant explained his method of computing interest, and there is no claim that the proper method was not used. According to defendant's evidence the amount remaining unpaid on the principal contract, exclusive of the claim for taxes. etc., paid by him, was $92.57; also that the taxes, assessments, and possibly some insurance premiums, paid by defendant, including interest thereon at the same rate as on the principal contract, amounted on the day before the trial to $207.59, amounting in all to $300.16.

The correctness of the amount is not seriously questioned. Plaintiff did contend that all the general taxes against the lots had been paid by her. But the tax sale certificates introduced in evidence show that general taxes as well as paving assessments were included in the sale.

The trial court found the balance due on the principal contract to be $94, and that defendant had paid taxes and other incidental expenses covered by the contract in the sum of $207.59, and that defendant was entitled to a lien on the lot for the payment of same and to foreclosure of the lien, and in the event plaintiff failed to pay same within 60 days, special execution should issue for the sale of the property without appraisement, and that defendant was entitled to an attorney's fee of $35. Judgment was entered accordingly.

Plaintiff contends that the court erred in awarding personal judgment against her for the amount of taxes, and particularly the paving taxes paid by defendant.

Many cases are cited to the effect that taxes are not debts in the true sense of the word "debt," and that no personal judgment may be obtained for taxes. This is true as a general proposition. But here defendant is shown to have paid taxes, etc., which plaintiff contracted and agreed to pay, to protect the title to the lots in order to enable him to convey good title under his contract when plaintiff had completed payment according to the contract. Defendant was entitled to a lien against the property for all taxes and assessments paid by him which had been legally assessed against the premises. Plaintiff can relieve the property and discharge the lien by payment of that which she agreed to pay.

There is some contention that certain paving assessments included in the sale for taxes were or may be void. There is a suggestion that there was a suit pending in the court at the trial involving that part of the paving assessments charged against the property for the paving of Sixth street, but nothing whatever is shown in the record as to why or for what reason these assessments may not be valid. Plaintiff made no showing whatever as to the invalidity of said assessments.

Another contention is made to the effect that the sale for taxes was to L. Fish, the mother-in-law of defendant Trosper, and

that he did not in fact pay the taxes and paving assessments. This is true, but the certificates introduced in evidence show due and regular assignment from L. Fish to Clarence E. Trosper. Furthermore, Clarence E. Trosper testified that he in fact furnished the money to purchase the certificates. He is clearly shown to be the owner of the tax sale certificates, and there being no showing whatever of any invalidity either of the assessments or the tax sale certificates, there was no error in allowing defendant his lien.

Complaint is made of an order denying a motion to vacate the order overruling the motion for a new trial. This motion was based, among other things, upon alleged illness of plaintiff's attorney between the date of the trial July 1, 1936, and the date of rendition of judgment, August 6, 1936, and at the time the motion for new trial was overruled. The record discloses that briefs were filed by both sides with the trial court after the evidence was taken.

The motion for new trial was, to some extent, based upon alleged newly discovered evidence. The only alleged newly discovered evidence was that it had been discovered that defendant had not in fact paid the insurance and the plaintiff had found receipts showing that she had paid the insurance. She does not show that these receipts covered all the insurance. The contract had run over a period of about twelve years. At the trial, when defendant was being called upon to show what amount of insurance he had paid, the record shows the following:

"Q. (By Mr. Edwards): You are unable to find the insurance? A. It is here. Q. All right, let it go. I don't think we paid it. The Court: The contract requires the paying of insurance by the purchaser or the seller? The Witness: The purchaser."

This amounted to an admission that defendant had paid the insurance to the amount he claimed.

There was no error in overruling the motion for new trial nor in overruling the motion to vacate said order.

Complaint is made that the court erred in ordering the lien foreclosed and sale of the property without appraisement. There does not appear to be an assignment of error covering this proposition. But section 450, O. S. 1931, requires appraisement of lands and tenements levied upon by execution. Section 451 provides for sale without appraisement in certain cases where appraisement is waived. We think the law requires appraisement before sale in a case of this nature. Otherwise, the record discloses that plaintiff has had a fair trial.

The judgment is modified so as to eliminate a sale without appraisement, and as so modified is affirmed.

BAYLESS, V. C. J., and PHELPS, CORN, and DAVISON, JJ., concur.