CURRY et al. v. FRERICHS et al.

No. 30746. May 23, 1944.

*149 P. 2d 95.*

James C. Wright and Glenn R. Watson, both of Okemah, and Henry L. Fist, Joe T. Dewberry, and E. Lawton Bragg, all of Tulsa, for plaintiffs in error.

Charles Dunn, of Okemah, for defendant in error.

HURST, J. This case involves title to mineral interests in a 120-acre tract of land in Okfuskee county. The case was tried largely on stipulation, but some oral testimony was introduced.

Some of the facts are obscure, but as

best we can determine from the record, the material facts are as follows: In 1922, Edwin A. Welty acquired all the mineral rights in and under one 40-acre tract of the land. Ethel Welty Curry succeeded to said interest on the death of Mr. Welty. In 1924, A. S. Kaplan acquired an undivided one-half interest in the mineral rights in and under the other 80-acre tract of the land. In 1927, Lee Bertha Brooks acquired title to the 120 acres, subject, however, to the mineral rights of Welty and Kaplan. In July, 1928, Lee Bertha Brooks conveyed an undivided one-fourth interest in the 120 acres to William S. Peters. Peters conveyed an undivided 1-16th interest in the minerals in and under the 80-acre tract to Floyd C. Dooley, and perhaps the remainder of his mineral interests to other defendants, as stated in the stipulation. Thereafter, he conveyed his remaining interest in the land back to Lee Bertha Brooks. Thereafter, Lee Bertha Brooks mortgaged the 120 acres to Wilma S. Frerichs to secure a loan of $1,250, the mortgage containing a warranty clause and purporting to cover the entire interest in the land. It appears that at the time this mortgage was given the deed to Peters had not been recorded, and Wilma S. Frerichs had no notice of the claim of Peters. Dooley conveyed to William L. Seawell and John H. Jones each a 1-48th interest in the mineral rights in and under the 80-acre tract, and upon his death and the subsequent death of his wife his remaining 1-48th interest by succession became vested in F. M. Little, Mrs. F. M. Little and Gordon Pulliam. In 1934, O. T. Bakhaus acquired from Peters an undivided 1-24th interest in the minerals in and under the 120-acre tract, but the record does not show how Peters then owned any interest in said land.

In May, 1940, the 120-acre tract was sold at tax resale to Okfuskee county. In October, 1940, Lee Bertha Brooks made an offer to purchase the land from the county, and thereupon it was duly advertised to be sold at a county sale on December 18, 1940. In the morning of that day it was offered for sale and struck off to the highest bidder, but the purchaser failed to pay the purchase price, and that afternoon it was again offered for sale and sold to James L. Ray. By a deed dated January 18, 1941, Ray conveyed the land to Lee Bertha Brooks. By a deed dated February 17, 1941, Lee Bertha Brooks reconveyed to Ray an undivided 17-24ths interest in the mineral rights in and under the land. Thereafter, Ray leased the 17-24ths interest for oil and gas purposes to Dick Jones and also conveyed to Jones a ½ interest in the mineral rights. He also conveyed to J. E. Scribner a 1-24th interest in the mineral rights. And on March 10, 1941, he conveyed to W. E. Rowsey a 1-24th interest in the mineral rights, but the deed was not recorded until June 19, 1941.

On March 22, 1941, the plaintiff, Wilma S. Frerichs, filed this suit to foreclose her mortgage, making Lee Bertha Brooks and her husband and all persons claiming interest in the land (except Rowsey) parties defendant. Ray filed a disclaimer. Those claiming mineral interests, above named, except Rowsey, filed answers setting up their claims. The issues made by the pleadings, the stipulations, and the evidence are, (a) whether Ray purchased the land at the county sale for and on behalf of Lee Bertha Brooks with the understanding that he would convey the same to her, and (b) whether the deed from Ray to Lee Bertha Brooks and the deed from Lee Bertha Brooks to Ray were delivered as a part of the same transaction.

The trial court found and adjudged that the plaintiff's mortgage is superior to the claims of all the defendants, that the mineral interests of all the above-named defendants, except Ethel Welty Curry, A. S. Kaplan, and except W. E. Rowsey, are subsisting and inferior only to plaintiff's mortgage, and that Curry, Kaplan, and Rowsey have no interest in the land. It ordered that the land be first offered for sale subject to said mineral interests, and that if it did not sell for enough to satisfy the mortgage indebtedness, it then be offered with the said mineral rights in the inverse order of alienation to said claimants of

the mineral rights. From said judgment, Ethel Welty Curry and A. S. Kaplan have appealed. No cross-appeal was filed by any of the other defendants.

For reversal, appellants rely upon two legal propositions, (1) that a person whose duty it is to pay taxes assessed against land may not directly or indirectly, through the agency of another, purchase the land at a tax sale and thereby strengthen his own title, and (2) that such a person cannot acquire title from a stranger who has purchased at or through a tax sale and thereby cut off the rights of third persons who owned interests in the land prior to the tax sale. They rely upon our decisions in Brooks v. Garner, 20 Okla. 236, 94 P. 694, 97 P. 995, and Grison Oil Corp. v. Lewis, 175 Okla. 597, 54 P. 2d 386, and similar authorities from other jurisdictions. At the time the case was tried below and briefed in this court, the case of Burnett v. Cole, 193 Okla. 25, 140 P. 2d 1012, had not been decided.

Dick Jones is the only defendant in error who has filed a brief, and he asks that his brief be considered as being also for Scribner. Jones contends (a) that there is nothing in the record that tends to prove that Ray purchased the property at the county sale for Lee Bertha Brooks, (b) that a tenant may acquire a hostile title as against a cotenant if he is free from deceit and fraud, citing Ammann v. Foster, 179 Okla. 44, 64 P. 2d 653, and (c) that the conveyance from Ray to Lee Bertha Brooks and the conveyance from Lee Bertha Brooks to Ray were delivered simultaneously and as a part of the same transaction, and that consequently the equitable title to the 17-24ths interest in the mineral rights remained in Ray.

We are of the opinion that this case is controlled by the legal principles announced in Brooks v. Garner and Burnett v. Cole, above. It is true that the property was sold to the county at the tax resale, and the county acquired a fee-simple title, which had the effect of extinguishing the mortgage lien and the claims of all parties owning an interest in the land prior to the resale. 68 O. S. 1941 § 432f; Shnier v. Vahlberg, 188 Okla. 471, 110 P. 2d 593. There is some authority that where the land is sold at the tax sale to the sovereign, and after the period of redemption has expired, the former owner may acquire a good title free from the claims of those owning interests prior to the tax sale (26 R. C. L. 413, notes 15 and 16), but we declined to follow that rule in Burnett v. Cole, above. Since the quality of the estate conveyed by a resale tax deed is the same whether the county or an individual is the purchaser, we think no such distinction should be made. One whose duty it is to pay taxes on land may not strengthen his title as against cotenants or others to whom he owes a duty to pay the taxes by allowing the land to be sold as a consequence of his failure to pay the taxes and by thereafter acquiring a title based upon such tax title. See, in addition to the authorities cited in our former opinions, above, Cooley, Taxation (4th Ed.) § 1437; 61 C. J. 1198, 1199; 26 R. C. L. 412, § 370; Black, Tax Titles (2d Ed.) §§ 273, 274; Blackwell, Tax Titles (5th Ed.) § 587; 75 Am. St. Rep. 239, note.

The case of Ammann v. Foster, above, relied upon by Jones, is not in point. It has to do with the right of one cotenant to acquire a title at a mortgage foreclosure sale, a judicial sale, and cut off the rights of other cotenants. We are dealing here with a tax sale, and the rules that govern the two classes of sales seem to be different in respect to the right of one cotenant to purchase and cut off the rights of other cotenants.

Lee Bertha Brooks acquired at least a 7-24ths interest in the mineral rights from Ray, and it is clear that this interest inures to the benefit of the plaintiffs in error. Burnett v. Cole, above.

The question, then, is whether Ethel Welty Curry has title to the remaining 17-24ths interest in the mineral rights in and under the 40 acres and whether Kaplan has title to the additional 5-24ths interest in the mineral rights in and under the 80 acres. If, as urged by

Jones, Ray did not purchase the land at the county sale for Lee Bertha Brooks with the understanding that he would later convey the land to her, and if the deeds from Ray to her and from her to Ray were delivered as a part of the same transaction so that Ray did not part with the equitable title to the 17-24ths interest in the mineral rights, then and under those circumstances the 17-24ths interest in the mineral rights did not inure to the benefit of the appellants. In other words, all the interest that Lee Bertha Brooks actually acquired after the resale, but only that interest, inured to the benefit of appellants.

The validity of the resale to the county is not questioned. The lien of plaintiff's mortgage and the mineral interests of the appellants and other defendants were thereby extinguished. The trial court was not asked to make findings of facts and conclusions of law, and none were made. The record does not disclose the reasons for the conclusions reached. The only theory on which it could be held that the mortgage lien was superior to the claims of Jones and Scribner is that the full title was revested in Lee Bertha Brooks after the resale to the county, and that since she had warranted the title in the mortgage, the lien was restored under the doctrine of after-acquired title. If the contentions of Jones and Scribner as to the facts are correct, the equitable title to 17-24ths interests in the mineral rights was never revested in Lee Bertha Brooks after the resale, and, but for the judgment holding otherwise and not appealed from by Jones and Scribner, the mortgage lien is inferior to such 17-24ths mineral interest. If the full title was revested in Lee Bertha Brooks so that the lien of the mortgage was fully restored, the title thus acquired also inured to the benefit of the appellants and they now own the mineral interests acquired by Welty and Kaplan prior to the time Lee Bertha Brooks acquired the land. And we do not understand how the court could hold that the mineral rights acquired by Dooley and Bakhaus from Peters are now subsisting and those of the appellants are not.

It is apparent that the trial court based his judgment upon a misapprehension of the law. The appellants are entitled to a new trial so that their rights may be determined in accordance with the legal principles herein announced. The record before us is unsatisfactory and is not such that we can decide the questions presented. The mortgage lien is inferior to whatever interest the appellants own, and those interests cannot be affected by the sale of the land under the mortgage foreclosure decree. Since no cross-appeal was filed by any of the other defendants, we are not concerned with the rights of the plaintiff and the other mineral claimants as between themselves or the rights of the other mineral claimants as against each other, and we intimate no opinion thereon.

Reversed, with directions to proceed not inconsistently with the views herein expressed.

CORN, C. J., GIBSON, V. C. J., and BAYLESS and DAVISON, JJ., concur.