McDONALD, County Treas., et al. v. DUCKWORTH.

No. 32528. Oct. 8, 1946.

*173 P. 2d 436.*

A. G. T. Vaughn, Co. Atty., and Ross Rutherford, Asst. Co. Atty., both of Altus, for plaintiffs in error.

Robinson & Oden, of Altus, for defendant in error.

DAVISON, J. The plaintiff, R. J. Duckworth, sued the defendants, the county treasurer and board of county commissioners of Jackson county and the city of Altus, to quiet title to three lots in said city and for judgment decreeing that all the ad valorem taxes and special assessments levied against the lots for 1939 and all previous years were cancelled by the 1940 tax resale. Judgment was for plaintiff, and defendants have appealed, appearing herein as plaintiffs in error.

The case was tried on the pleadings and a written stipulation of facts. The record does not disclose whether there were any special assessments standing against the property. The stipulation discloses that R. M. Thorp, F. B. Thorp, and S. A. Cook were the owners of the lots at the time of the 1940 resale and prior thereto. J. A. Carter was the purchaser of the lots at the resale in question. His bid was for a sum less than the actual amount of taxes due thereon. That after Carter acquired title to said lots he conveyed the lots to the former owners, who, in turn, conveyed said property to William E. Neher and Eloise Neher, who in turn conveyed to plaintiff. The parties all agree that the resale proceedings were valid, and that Carter acquired a valid fee-simple title to the property and that in doing so he acted independently of, and without any agreement with the former owners to reconvey, and that the purchase was made in good faith for himself.

The plaintiffs in error assert that by reason of the reconveyance to the former owners, and regardless of the good faith of Carter in the purchase thereof, the tax lien was reinstated, and the amount of the original bid should be treated only as a credit on taxes and the lien revived against the property for the balance of the taxes.

The sole question to be decided in this case is whether the reconveyance of the property to the former owners, by the bona fide tax deed purchaser, who acted independently of, and without any agreement with, the former owners to reconvey to them, and who was in no manner under obligation to pay the taxes, operated to revive the tax lien against said property.

The question is one of first impression with us. Our attention has not been called to any authorities from any other jurisdiction which deal with the precise question. From an independent research we have been unable to find where the exact question has ever been called to the attention of any court for decision. By analogy, however, plaintiffs in error direct our attention to the fact that this court has long been committed to the rule that where one who is under a moral or legal obligation to pay taxes on land purchases, either directly or indirectly through the agency of another, the land at a tax sale, the purchase is deemed a mode of paying the taxes and of redeeming from the tax sale, and he does not thereby acquire any or strengthen his title. Brooks v. Garner, 20 Okla. 236, 94 P. 694; Grison Oil Corp. v. Lewis, 175 Okla. 597, 54 P. 2d 386. Plaintiff in error further points out that in the case of Burnett v. Cole, 193 Okla. 25, 140 P. 2d 1012, we held that a "person on whom the original duty to pay the taxes rested may not profit by his own neglect even by purchasing from a stranger who has purchased at the tax sale." In the latter case we were discussing the rights of a cotenant and we pointed out that "in such cases the equities existing against the original obligor may be cut off while the land is owned by such stranger or other third parties, but when the land is coveyed to the original obligor, the former status is at once restored, or at least the original obligor is estopped to deny it."

These cases were followed in Curry v. Frerichs, 194 Okla. 230, 149 P. 2d 95.

It will be noted that all of the above cases deal with the rights of interested third persons to whom the original obligor owed a legal or moral duty, and not with the rights of the governmental body imposing the tax.

We have also found an abundance of authority from other jurisdictions dealing with the rights of the original owner who was obligated to pay the tax to purchase from a tax purchaser with the view of eliminating the rights of third parties, such as cotenants, mortgagees, lienholders, and other third parties to whom the original obligor owed a duty to pay or protect. We find that the great weight of authority is to the effect that the cases support the general proposition that the original obligor cannot buy from the bona fide tax purchaser and asserts such title successfully against a third party to whom the original obligor owed an absolute duty to protect. The basis usually for such a rule is that it is the duty of the original obligor to keep the taxes paid and that he cannot be allowed to derive an advantage from his own wrong in permitting them to go unpaid. 134 A.L.R. 289, at page 292.

We have held, and are committed to the rule, that the issuance of a resale tax deed shall effect the cancellation and setting aside of all delinquent taxes, assessments, penalties, and costs previously assessed or existing against real estate sold at resale tax sale, and of all outstanding individual and county tax sale certificates; and shall vest in the grantee an absolute and perfect title in fee simple in the real estate involved. Shnier v. Vahlberg, Co. Treas., 188 Okla. 471, 110 P. 2d 593. We have also held that ad valorem taxes are not debts but are positive acts of the government, are the creatures of statute, and must be enforced in the manner provided by statute. We have also held that the statutes of this state provide a full and comprehensive system by which delinquent taxes on real estate may be collected by sale of such real estate as provided by statute. City of Sapulpa v. Land, 101 Okla. 22, 223 P. 640. Also, see 61 C. J. 1053, par. 1381.

Since we are committed to the rule that real estate taxes are not a personal debt of the owner, we are of the opinion that there is a valid recognizable distinction between the case such as here presented and the cases where the obligor owed a personal promise to perform some legal and moral duty to a class such as third party mortgagees, cotenants and lienholders. In the case before us the state is the instrumentality causing the sale. The state is the sole agency authorized to conduct the sale, and the purpose of the sale is to obtain the best possible offer for the collection of its tax lien. The state is interested in conducting a legal sale for the purpose of collecting its tax lien.

The state is the statutory machinery used in conducting the sale. When the state has sold the property to a bona fide purchaser in good faith, without collusion, nor as the agent of the person obligated to pay the tax, a deed executed in pursuance thereof transfers a full and complete fee-simple title to the purchaser. Such purchaser may thereafter convey full and complete merchantable title to anyone, including the former owner, except that such title would inure to the benefit of such third parties such as mortgagees, cotenants, and lienholders, and such other persons to whom the original obligor owed a personal obligation to pay or protect. The state is in a different position. Here the state sold the property to an admittedly bona fide purchaser, and, therefore, being the instigator and promulgator of the sale, is not in a position to complain of the disposition the purchaser might make of the property. The rights of third parties are not here involved. The state has had its day in court. This rule, of course, would not be applicable if collusion was used in the purchase of the tax title by the tax purchaser.

From the over-all picture presented in the present case, we feel that we should adopt the rule that the reconveyance of the property to the former owners, by the bona fide tax deed purchaser who was in no manner under obligation to pay the taxes, does not operate to revive the tax lien against said property in favor of the governmental body imposing the tax and engineering and conducting the sale.

Judgment affirmed.

GIBSON, C.J., and OSBORN, BAYLESS, WELCH, and CORN, JJ., concur. HURST, V.C.J., dissents.

---

HURST, V.C.J. There are two reasons why I dissent.

1. The majority opinion is based on the rule that the former owners were "in no manner obligated to pay the taxes" assessed against their land. While it is true that ad valorem taxes assessed against land are not debts in the sense that a personal judgment may be recovered by the state or one of its municipal subdivisions against the owner, and consequently the owner is under no *legal* obligation to pay the taxes (City of Sapulpa v. Land, 101 Okla. 22, 223 P. 640), and the state must collect the taxes by sale of the property, yet there is a *moral* obligation resting upon the owner to pay his taxes. This moral obligation is owed to the state and its municipal subdivisions to the end that the essential functions of government may be carried on. And it is owed to the other property owners to the end that they shall not be compelled to discharge more than their just share of the tax burden by helping to make up the deficit caused by the failure of other owners to carry out their moral obligation to pay their taxes. The present case fairly illustrates what I mean. The taxes assessed against the three lots involved in this case, and for which they were sold at the resale, amounted to $626.69. This tax liability was, under the majority opinion, extinguished by receipt of $174.55, leaving a deficit of $452.14, which must be made up by all the owners of taxable property in the city, county, and school district—the three municipalities affected. The former owners acquired the lots, after the resale, freed from this deficit.

The majority opinion cites no case, and I have found none, dealing with the precise question before us. We are free to announce a rule that will be in the public interest and will encourage owners to pay their taxes and discourage their failure to do so. The majority opinion will have the opposite effect. It is contrary to the philosophy underlying our decisions, cited in the majority opinion, and particularly the statement in Burnett v. Cole, 193 Okla. 25, 140 P. 2d 1012, that "a person on whom the original duty to pay the taxes rested may not profit by his own neglect even by purchasing from a stranger who has purchased at the tax sale." It is reasonable to assume that the former owners here profited by letting their lots be sold and by then re-acquiring them from the tax purchaser. It would be but a slight extension of the rule referred to in the majority opinion, intended for the protection of cotenants, mortgagors and other third persons to whom the owner owes a moral or legal obligation, to hold that when the former owner, who owed a moral obligation to pay his taxes, re-acquires the property after it has been sold for taxes, the lien for the unpaid portion is restored in favor of the state or its municipal subdivisions just as the former status is restored in favor of individuals to whom the owner owed a moral or legal obligation to pay the taxes. The public policy in favor of private individuals is based upon court decisions, and I think it should be slightly extended by a decision in the present case. It covers *moral* as well as *legal* obligations. If the owner will not be permitted to strengthen his title against private individuals, by acquiring the property directly or indirectly through the tax sale, I see no reason why he should be permitted to strengthen his title

against the state by so re-acquiring the property. Public rights should not be inferior to private rights.

The rule followed by the majority opinion will be subject to easy abuse. It will tend to encourage collusion with the hope that the collusion will not be detected, and it will be difficult for the public officers to establish the collusion. While this one deficit will not seriously embarrass the three municipalities affected, yet the majority opinion constitutes an opening wedge and points the way for others desiring to avoid paying their taxes, and desiring to still retain their property, to do so, and they may be expected to avail themselves of the opportunity, and the municipalities are likely to be financially embarrassed by the rule approved in the majority opinion.

While the rule I suggest would constitute a slight restraint on the free alienability of the land, yet it would do so no more than the rule forbidding the reacquisition of the land by fiduciaries to which we are committed and which is approved by the majority opinion, and the slight harm done the public good by the restraint would be far outweighed by the public good which would result from the enforcement of the proposed rule.

2. Unfortunately, the stipulation on which the judgment appealed from was rendered does not cover several matters that a court should want to know about. What were the relations, if any, between the purchaser at the resale and the former owners? How soon after the resale did the former owners re-acquire the lots? What was the consideration paid by the former owners for the lots when they were re-acquired? What was the value of the lots? These questions being unanswered in the record, I think the least that should be done is to send the case back for another trial. The county attorney should not be permitted to stipulate away the rights of the municipalities by an inadequate stipulation — a conclusion — that the purchaser at the resale did not make the purchase at the request or for the benefit of the former owners, but the court should be advised of the facts in detail before making a decision affecting the public interest. The county attorney should have no more right to so stipulate away the rights of the municipalities than public officers should have to waive the statute of limitations by not pleading it, which we have said cannot be done. Nordman v. School District, 190 Okla. 135, 121 P. 2d 290.

In American Exchange Corporation v. Lowry, 178 Okla. 433, 63 P. 2d 71, the applicable rule is stated as follows:

"We frown with disapproval, however, upon any act on the part of an officer of a political subdivision of state which is tantamount to a voluntary confession of judgment, or which may aid or facilitate such a litigant in procuring a judgment without having the *entire matter involved in the suit clearly brought to the attention of the court* by having the issues before the court properly joined."

(Italics mine.)