C. G. MYERS, Plaintiff in Error,

v.

Jensine PARKINS, a widow, Margaret Lash and Percy H. Lash, her husband, Defendants in Error.

No. 40764.

Supreme Court of Oklahoma.

Oct. 26, 1965.

Rehearing Denied Feb. 22, 1966.

Application for Leave to File Second Petition for Rehearing Denied March 15, 1966.

Brown, Brown & Brown, by Donald R. Hackler, McAlester, for plaintiff in error.

Stevenson, Huser & Huser, by Stanley Huser, Jr., Holdenville, for defendants in error.

HALLEY, Chief Justice.

, This action was brought by C. G. Myers, hereinafter referred to as plaintiff, against Jensine C. Parkins, a widow, and Margaret D. Lash and Percy H. Lash, hereinafter referred to as defendants, and others not involved in this appeal, to quiet title to a certain tract of land situated in Pittsburg County, Oklahoma. Defendants filed an answer and cross-petition on March 1, 1963, asserting that Jensine C. Parkins was the owner of an undivided one-fourth interest and Margaret D. Lash and Percy H. Lash were the owners of an undivided three-fourths interest in the minerals and seeking to quiet title to such interest. The trial court entered judgment for the plaintiff quieting his title to all the land involved in the action, except the mineral interests, and for the defendants quieting their title to the mineral interests. Plaintiff appeals.

The facts are not in dispute. Travis Myers, the then fee owner, by mineral deed, dated March 25, 1937, and recorded on April 21, 1937, conveyed all the oil, gas and other minerals in the property to Oscar H. Parkins. Thereafter, Oscar H. Parkins and his wife, Jensine C. Parkins, conveyed an undivided three-fourths interest in the minerals to Margaret D. Lash and Percy H. Lash, by deed, dated August 14, 1937, and recorded on August 18, 1937. Jensine C. Parkins subsequently inherited the remaining undivided one-fourth interest in the minerals at the death of Oscar H. Parkins.

While Travis Myers was owner of the surface, the property was sold on November 1, 1948, by the County Treasurer of Pittsburg County for delinquent and unpaid ad valorem taxes for the year 1947, and plaintiff, who was Travis Myers' son, purchased the County Treasurer's Certificate of Tax Sales. Travis Myers died intestate on November 14, 1948, thirteen days after the tax sale, and left a widow and five children surviving as his sole and only heirs. Plaintiff, as one of Travis Myers' children, inherited an undivided two-fifteenths interest in the surface of said property. Disclaimers have been filed in the cause by the other heirs of Travis Myers, deceased.

Plaintiff continued to own his undivided two-fifteenths interest in the surface of said property and to pay the ad valorem taxes for approximately eight years by permitting the same to become delinquent and by having the payment thereof endorsed on his tax certificate. On May 8, 1956, defendants were given notice by publication and by mailing that unless redemption was made on or before a day certain, a tax deed to the property would be demanded by the said plaintiff. Plaintiff thereafter made his Application for Tax Deed, and a tax deed to the property was issued to him and recorded on August 15, 1956. After acquiring the tax deed, plaintiff took possession of the land for the first time and has since remained in possession of same, but has never engaged in any mining, drilling or other operation for the production for oil, gas or any other minerals from the land.

Plaintiff claims in his first two propositions an absolute estate in fee simple in said lands, including the oil, gas and other mineral rights therein, based upon the tax deed and especially upon the five year statute of limitations, 12 O.S.1961, § 93(3) and (6), and the decisions in Hales et al. v. Lee et al., 199 Okl. 110, 184 P.2d 451; Jenkins v. Frederick, 208 Okl. 583, 257 P.2d 1058; and Colonial Royalties Company v. Sitler, Okl., 298 P.2d 1060.

It is definitely settled in this jurisdiction that the purchase of a tax deed by one under duty to pay the taxes adds'

nothing to his title. In the body of the opinion in State ex rel. Com'rs of Land Office v. Continental Oil Company, Okl., 273 P.2d 1002, 1003, we said:

" * * * From a tax standpoint, the surface and the minerals constituted one unit. The assessment of the surface carried with it the minerals thereunder. But there was no duty on the part of plaintiff, the mineral owner, to pay the taxes. That duty rested upon the surface owner and his grantee, whether the grantee be as an owner or as a mortgagee. Further, the duty to pay the taxes was so inescapably that of the surface owner or mortgagee that if they failed to pay the taxes and allowed the property to be sold at tax sale such surface owner could never thereafter purchase the tax title to the exclusion of the former mineral owner. Colby v. Stevenson, Okl., 265 P.2d 477, and numerous cases therein cited. * * *"

■ McClaren v. Steele, Okl., 365 P.2d 378, is similar to the case at bar. In that case the defendant, Bob McClaren, inherited an undivided interest in certain land located in Cimarron County, Oklahoma, when his mother, Birdie McClaren, died in 1936. On October 13, 1945, the defendant, Bob McClaren, acquired a tax-sale certificate issued as a result of delinquent ad valorem taxes levied on the land for the years 1931 to 1941, inclusive. Thereafter, and on February 19, 1946, the tax certificate was surrendered by the defendant and a tax deed was issued to him. He took possession of the land for the first time after acquiring the tax deed and remained in possession thereafter. Plaintiff instituted an action in that case on November 5, 1955, to establish his and all other interested persons' interest in the land. The defendant filed an answer and cross-petition in which he alleged he acquired title to the land under the tax deed and prayed that his title be quieted. We there affirmed the trial court's judgment quieting title against the defendant's

tax deed and in the body of the opinion, starting at page 380, stated:

"We are of the opinion that following the death of defendant's ancestor, Birdie McClaren, defendant was under a legal duty to pay ad valorem taxes on the property in controversy (this duty, of course, rested on each co-tenant) and the fact that Birdie McClaren's personal representative was in possession of defendant's interest in said land from 1936 through 1941 did not serve to relieve defendant of said duty. * * *

* * * * * *

"As heretofore pointed out, the land was sold for delinquent taxes accruing for the years 1931 to 1941, inclusive. Defendant was under a legal duty to pay taxes for the latter portion of said period. In order to secure the tax title it was necessary to pay delinquent taxes for said latter years and the defendant in securing said title therefore paid taxes that he was under a duty to pay. The fact that defendant in acquiring the tax title first purchased a tax certificate is without significance. * * *"

In the syllabus in Burnett et al. v. Cole et al., 193 Okl. 25, 140 P.2d 1012, we used this language:

"The owner of the surface of real estate in whose name the land is assessed is obligated to pay the taxes thereon, and if he fails to do so, and the land is sold for taxes, he cannot obtain title from said tax sale purchaser and defeat the owner of the coal rights separately owned but not separately assessed of his interest, but his purchase as between said parties is deemed, a mode of paying the taxes."

See also Curry et al. v. Frerichs et al., 194 Okl. 230, 149 P.2d 95; Warner et al. v. Day et al., 197 Okl. 319, 170 P.2d 246; Edwards v. Gardner et al., 198 Okl. 217, 176 P.2d 1014; and Womble v. Mahoney, Okl., 383 P.2d 26.

■ We are of the opinion that following the death of plaintiff's father, Travis Myers, on November 14, 1948, plaintiff

was under the legal duty to pay ad valorem taxes on the property in controversy. As previously indicated, the property was sold for delinquent ad valorem taxes for the year 1947, and that the plaintiff purchased the certificate of tax sale on November 1, 1948, and continued to pay the ad valorem taxes on the property until acquiring a tax deed on August 15, 1956, by permitting the ad valorem taxes to become delinquent and by having the payment thereof endorsed upon his tax certificate. Plaintiff was under a legal duty to pay taxes for the latter portion of said period. In order to secure the tax title it was necessary to pay delinquent taxes for said latter years and the defendant in securing said title therefore paid taxes that he was under a duty to pay and did not thereby acquire any interest in the minerals antagonistic to the defendants. The fact that plaintiff purchased a tax certificate prior to his father's death in acquiring the tax title is without significance.

, Hales et al. v. Lee et al., supra; Jenkins v. Frederick, supra; and Colonial Royalties Company v. Sitler, supra, cited by plaintiff in support of his first two propositions, are not in point for the reason they do not involve a situation where the purchase of a tax deed was by one under a moral or legal obligation to pay the ad valorem taxes.

Plaintiff's third and final proposition is that "Upon actual ouster of one co-tenant by another, the Statute of Limitations begins to run against the ousted co-tenant", and cites Beaver et al. v. Wilson et al., 117 Okl. 68, 245 P. 34, and 1 Am.Jur., Adverse Possession, § 52, as authority for this proposition. As we understand his argument, plaintiff argues here that he ousted defendants from their severed mineral interests and acquired title thereto by securing and recording the tax deed and by taking and holding possession of the surface for more than five years.

We think that Douglass et al. v. Mounce et al., Okl., 303 P.2d 430, is in point here. In that case while the property

was owned by the allottee, an undivided one-half interest in the minerals was conveyed to G. E. Rogers, who recorded the deed. This interest was transferred to several of the defendants. Thereafter, the allottee conveyed the surface and the remaining mineral interest to Scott Lockhart. While Lockhart was in possession, Creek County attempted to sell the property for taxes and a resale deed was issued to the County. On August 11, 1941, a commissioner's deed to the property was executed in favor of Jack Carman and on August 25, 1941, Lockhart also quitclaimed his interest to Carman. Lockhart's tenant was in possession of the property. Carman filed both deeds of record on September 3, 1941, and in December, 1941, quitclaimed his interest to plaintiff's predecessor in title, who eventually conveyed all her interest to the plaintiff. Plaintiff brought suit to quiet title against the mineral owners relying on the tax deed's recordation and adverse possession of the surface for the prescribed period. There was no possession of the mineral estate separate from possession of the surface. We there reversed the judgment quieting the plaintiff's title against the mineral owners, and beginning at page 432 of that opinion, stated:

"The facts show that the tax deed was recorded, but do they also show an adverse possession? * * *

"Upon the delivery of the Lockhart deed, however, Carman came into constructive possession of the property through Lockhart's tenant. Since he was entitled to the possession of the property by virtue of this deed, he is presumed to have taken possession in accordance with his rights under that conveyance. (Citations) An unlawful entry, adverse to himself, will not be presumed. (Citations) On the contrary, every presumption is in favor of possession in subordination to the title of the true owner. By operation of law, therefore, Carman became a co-tenant with the Rogers' mineral interest owners, of

whose interest he was apprised by their recorded deed. This situation is to be distinguished from that in which adverse possession is established before the acquisition of a deed from the record owner. Here, the original entry was not wrongful and no action accrued to the defendants at that time. Being a co-tenant, Carman's possession of the property was constructively the possession of the other co-tenants. (Citation) Thus, to establish the necessary adverse character of his possession, some disseizin and ouster of the other co-tenants by Carman was necessary because the mere possession of a co-tenant, no matter how full and complete, is not adverse.

"Prescriptive title by adverse possession is not established by inference. The burden of proving an ouster is on the person asserting the adverse possession. (Citation) Here, in view of the presumption heretofore noted and the language used in the Lockhart deed, an ouster cannot be predicated on the mere acceptance and recording of the county deed."

In the body of the opinion of Pan Mutual Royalties v. Williams, Okl., 365 P.2d 138, 140, we stated:

"Not only is a cotenant restricted in the conditions under which he may hold adversely, but adverse possession of severed minerals is much more difficult. In Claybrooke v. Barnes, 180 Ark. 678, 22 S.W.2d 390, 67 A.L.R. 1436, the opinion holds:

" 'Where ownership of the surface and of the mineral rights have been severed, the only way the Statute of Limitations can be asserted against the owner of the mineral rights or estate is for the owner of the surface estate or some other person to take actual possession of the minerals by opening and operating mines for the statutory period.'

"See also 93 A.L.R. at page 1232. This rule is supported by the case of Deruy v. Noah, 199 Okl. 230, 185 P.2d 189.

"We therefore hold that the interest of the defendant has not been extinguished by the tax deed of plaintiff."

In the case at bar, plaintiff took possession of the property approximately eight years after he had inherited an undivided two-fifteenths interest in the surface thereof. Therefore, by operation of law, plaintiff became a co-tenant with the defendants at his father's death, and his mere possession of the surface of said property thereafter, no matter how full and complete, could not operate as an ouster of defendants' mineral interests, nor could such ouster be predicated on his mere acceptance and recording of the tax deed. It was undisputed that plaintiff never engaged in any mining or drilling operations upon the land conveyed by the certificate deed. Thus it cannot be said that defendants were ousted from their mineral interests.

Plaintiff argues further in his reply brief as follows:

" * * * (1) That the tax deed issued to plaintiff was void; (2) That when plaintiff gave notice to the defendants, as provided by statute, that he was applying for such tax deed, he ousted the defendants or repudiated any title defendants might have claimed in said property and the Statute of Limitations began operating from that date; (3) That possession under a void, recorded tax deed was possession of the entire property including nonproducing minerals wherewith title could be acquired to said property by adverse possession."

Plaintiff's argument here is in substance just repetition of the argument presented under his second proposition and is without merit. As heretofore pointed out, plaintiff was obligated to pay the ad valorem taxes, and when he failed to do so and allowed the property to be sold for delinquent taxes, he could not thereafter purchase the tax title and defeat the defendants' mineral interests. The fact that plaintiff, in purchasing the tax title, noti-

fied defendants he was applying for a tax deed and had possession of the surface for more than five years after recording the tax deed is without significance since such purchase is deemed just a mode of paying the taxes. Plaintiff did not thereby acquire any interest in the minerals antagonistic to the defendants. Burnett et al. v. Cole et al., supra.

Beaver et al. v. Wilson et al., supra, cited by plaintiff in support of his third proposition, is not in point for the reason it did not involve the ouster of a mineral owner.

Judgment affirmed.

DAVISON, WILLIAMS, BLACKBIRD, IRWIN, BERRY, HODGES and LAVENDER, JJ., concur.