UNITED STATES of America, Plaintiff in Error,

v.

HOME FEDERAL SAVINGS & LOAN ASSOCIATION OF TULSA, a corporation, Alphonzo Williams, State of Oklahoma ex rel. Oklahoma Employment Security Commission, Evert Smith, d/b/a Asphalt Associates, D. E. Rigney and Estate of Eugene W. Reynolds, Defendants in Error.

Nos. 41347, 41349.

Supreme Court of Oklahoma.

July 12, 1966.

As Corrected on Denial of Rehearing Sept. 20, 1966.

For dissenting opinion, see 418 P.2d 329.

See also Okl., 418 P.2d 328.

Richard M. Roberts, Acting Asst. Atty. Gen., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Joseph Kovner, Meyer Rothwacks, Alec A. Pandaleon, J. Edward Shillingburg, Attys., Department of Justice, Washington, D. C., John M. Imel, U. S. Atty., Sam E. Taylor, Asst. U. S. Atty., of counsel, for plaintiff in error.

Houston, Klein & Davidson, James R. Jessup, Edward L. Jacoby, Tulsa, for Home Federal Savings & Loan Ass'n of Tulsa, defendant in error.

BERRY, Justice.

The terminal issue raised by the Federal Government's appeal from the trial court's judgment involves the priority between federal tax liens and the state lien for ad valorem taxes against real property sold at mortgage foreclosure sale.

By two separate transactions in 1958 Alphonzo Williams executed promissory notes to Home Federal Savings & Loan Association, secured by mortgages on described parcels of real property. By warranty deed (January, 1959), the debtor acquired other real property already mortgaged to Home Federal, and assumed and agreed to pay the existing indebtedness. March 1, 1959, the mortgagor defaulted upon all the mortgage payments. Between August 25, 1961, and September 17, 1962, United States tax liens totaling $910,778.93, were filed against the mortgagor. On April 16, 1963, Home Federal filed three foreclosure suits against the defaulted mortgagor for recovery of the balance due (in excess of $12,000.00), and asked judgment for attorneys' fees, abstract charges, insurance premiums, interest and costs, and for judgment of foreclosure and sale of the properties to satisfy the judgment in each action.

Numerous lien claimants were made defendants, as well as the State of Oklahoma and the Oklahoma Employment Security Commission, which claimed a lien based upon tax warrants filed subsequent to the first lien ($53,081.47) filed by the Federal Government, but prior to the remainder of the Government's liens which made up the total tax liability mentioned above. The State and certain lien claimant defendants disclaimed any interest. Other lien claimants either filed disclaimers, or were found to have no interest affected by the judgment and need not be mentioned hereafter. Also made defendants were D. E. Rigney, assignee of a judgment entered prior to filing of the federal tax warrants, and the Federal Government whose rights arose under the tax warrants mentioned.

In each action the trial court found the allegations of Home Federal, the Employment Security Commission, Rigney and the Federal Government were true; that the mortgagor (Williams) was indebted for the balance due on each note, and the attorneys' fees, insurance premiums advanced, interest and costs; that Home Federal's mortgage liens were prior to the rights of every other claimant; that Williams' indebtedness to Rigney, the Employment Security Commission and the Federal Government was as claimed by each party. Judgments were entered October 16, 1964, in accord with such findings, the journal entry in each action containing the following:

"The court further finds that a dispute has arisen between the plaintiff and the United States of America as to whether or not plaintiff may sell the above described real estate at sheriff's sale, subject to taxes and tax sales. The court finds that plaintiff may sell the subject property, subject to taxes and tax sales, to which ruling and order the United States of America duly excepts and said exception is allowed.

\* \* \* \* \* \*

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the court that plaintiff may sell the above described real estate, subject to taxes and tax sales, to which ruling and order the United States of America duly excepts and said exception is allowed."

The judgment further provided that upon the mortgagor's failure to satisfy the judgments, including interest, attorneys' fees and

costs, the sheriff should sell the property after appraisement and the proceeds of each sale should be distributed by the court clerk according to law, as follows:

"In payment of cost of said sale and of this action and (the principal sum of each judgment), the amount as aforesaid found to be due to the said plaintiff, together with interest thereon and costs.

"The residue, if any, shall be held by the clerk of this court to await the further order of the court."

Motion for new trial, based upon alleged errors of law occurring at the trial, was filed and overruled. Order for sale with appraisement issued October 16, 1964, pursuant to which sale was had December 2, 1964. Home Federal was the purchaser in each case, bidding in excess of two-thirds of the appraised value, equivalent to the portion of the judgment comprised of principal and interest. In one case (No. 31348) Home Federal was required to pay an additional $823.10 of principal and interest in order to make the required two-thirds statutory bid.

After confirmation of the sales the Government perfected separate appeals upon the original record. By appropriate order these appeals were consolidated for briefing and consideration. The fundamental issue involves the claim of reversible error inhering in the trial court's judgment directing sale of the mortgaged property subject to state ad valorem taxes. The mortgagee paid taxes ($2,051.44) apparently due for the years 1963–1964. The Government concedes the superiority of both the mortgage liens and the Rigney judgment lien. However, the Government contends the rule of relative priorities announced in United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520, must be applied.

Review of cases dealing with this priority problem discloses that prior to 1950 some lower Federal courts denied superiority of federal tax liens (under 26 U.S.C.A. § 3670) over prior rival liens for county taxes, local tax liens, attachment liens, landlord's liens, etc. In some instances mechanics' and materialmen's liens recorded pursuant to state statute were extended priority over federal liens under section 3670, which grants the Federal Government a lien against real and personal property of any person who refuses to pay any tax upon demand. The lien granted under this section is limited under 26 U.S.C.A. § 3672:

"Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector. * * *"

In re Taylorcraft Aviation Corp., (CC6) 168 F.2d 808; In re Caswell Const. Co., Inc., D.C.N.D.N.Y., 13 F.2d 667; The River Queen, D.C.E.D.Va., 8 F.2d 426. In Taylorcraft, supra, the federal lien was subordinated upon the ground that value of the security had been enhanced by labor and material for which the lien was asserted, and to permit defeat of the lien by the federal lien would work unjust enrichment.

Beginning with United States v. Security Trust & Savings Bank, (1950) 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53, a change became apparent. This case dealt with California law under which a creditor's attachment fixed a lien upon realty effective when recorded. That court had held that a subsequent judgment merged with the attachment lien and related back to recordation of the attachment lien. The Supreme Court reversed, observing that under California law an attaching creditor had only a contingent lien, since possible contingencies might prevent the attachment lien from being perfected by judgment and recordation. The attachment lien was declared to be nothing more than lis pendens notice of the creditor's right to perfect a lien. Further the doctrine of relation back did not operate to destroy the realities of the situation, since at the time federal liens were filed the attaching creditor did not have a judgment lien.

Following Security Trust, supra, lower courts were inclined to hold that various types of liens formerly held to be prior to federal tax liens, were perfected and choate

liens under statute (of the states involved) and entitled to priority over the federal tax lien. See Petition of Gilbert Associates, Inc., (1952) 97 N.H. 411, 90 A.2d 499, holding municipal taxes to be in the nature of a judgment under state law. United States v. Liverpool, etc. Ins. Co., Ltd. (5 Cir. 1953), 209 F.2d 684, holding Texas garnishment lien prior to federal tax lien. United States v. Acri (Ohio), 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264, holding attachment lien prior to the federal tax lien, by characterizing the attachment process under Ohio law an advance execution.

In United States v. Gilbert Associates, Inc., (1953) 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071, the Supreme Court reversed, rejecting the designation of municipal taxes as being in the nature of a judgment under state law in view of the Federal question involved, and expressly denied that such taxes were entitled to priority under the statute, 26 U.S.C.A. § 3672.

In Acri, supra, the Ohio court was reversed upon authority of Security Trust, supra. The federal tax lien, recorded subsequent to date of the attachment lien but prior to the attaching creditor's judgment, was given priority despite the state court's holding that the attachment process under state law amounted to an execution in advance.

In Liverpool, etc., supra, the Supreme Court reversed a decision by the circuit court that a Texas garnishment lien was superior to a federal tax lien recorded subsequent to date of the garnishment lien but prior to date of the garnishor's judgment.

In United States v. Scovil, (1955) 348 U.S. 218, 75 S.Ct. 244, 99 L.Ed. 271, a statutory South Carolina landlord's lien was held to be only a caveat of a lien to be perfected, and subordinate to the federal tax lien filed after the landlord's lien attached.

■ These decisions have been followed by United States v. City of New Britain, (1954) 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520, and United States v. Buffalo Savings Bank, 371 U.S. 228, 83 S.Ct. 314, 9 L.Ed.2d 283, which provide authority for the Government's contention that the trial court erred in ordering the property sold subject to state taxes, and that the rule of relative priorities of tax liens in the cases just cited must be applied. The rationale of New Britain, supra, simply is that "the first in time is the first in right." Rankin v. Scott, U.S., 12 Wheat. 177, 179, 6 L.Ed. 592. The argument was that because the Federal statute (26 U.S.C.A. § 3672) made the Government's lien invalid as to prior recorded mortgages and judgments, the federal tax lien likewise was invalid as respected statutory tax liens. This argument was answered:

"* * * The United States is not interested in whether the State receives its taxes and water rents prior to mortgagees and judgment creditors. That is a matter of state law. But as to any funds in excess of the amount necessary to pay the mortgage and judgment creditors, Congress intended to assert the federal lien. There is nothing in the language of § 3672 to show that Congress intended antecedent federal tax liens to rank behind any but the specific categories of interests set out therein, and the legislative history lends support to this impression." Citing U. S. v. Gilbert Associates, Inc., supra; U. S. v. Security Trust & Savings Bank, supra.

The foundation for the proposition that a later lien for state taxes cannot be accorded priority over an earlier federal tax lien was expressed in United States v. City of Greenville, 4 Cir., 118 F.2d 963:

"As pointed out above, the lien for taxes is a property right of the federal government. At the least, it is an instrumentality created by that government for the collection of its revenues. We know of no principle upon which it may be subordinated or its value impaired by state action, whether through exercise of the taxing power or otherwise. The error of these cases seems to have arisen from considering the statutory lien of the federal government as analogous to that

of the holder of a lien under mortgage, which is of course subject to the power of the state to tax the mortgaged property. The difference is that the rights of the mortgagee as well as of the mortgagor in the mortgaged property are held subject to the power of the state to tax it, whereas the rights of the federal government are not held subject to that power."

The settled law of priorities of liens expressed in New Britain makes further citation of authority and discussion of stated conclusions academic.

██ Decisions of the United States Supreme Court are binding upon this Court, and require us to promulgate rules of law in conformity therewith. Bailess v. Paukune, 208 Okl. 146, 254 P.2d 349. Although we may give our own interpretation of the nature and effect of a state tax law for purposes of internal administration, meaning of federal statutes is for the United States Supreme Court, and its interpretation will be followed by this Court. State ex rel. Oklahoma Employment Security Commission v. United States, Okl., 266 P.2d 973; Texas Co. v. Oklahoma Tax Commission, 207 Okl. 263, 249 P.2d 982, reversed 69 S.Ct. 561, 336 U.S. 342, 93 L.Ed. 721.

██ The Government finds no fault with the trial court's judgment, except for that portion which provided the property be sold subject to the ad valorem taxes. This brings us to an apparent inconsistent legal hypothesis. The mortgage lien is superior to the federal tax lien, yet by state law is subordinate to the lien for ad valorem taxes. *But,* the state's lien in turn must be held subordinate to the federal tax lien. From this circle of apparent legal contradiction we must reconcile legal order.

██ The statute, 68 O.S. 1961, § 15.8, requires assessment of real property for ad valorem tax purposes as of January 1st. Taxes on real property are due and payable on November 1st following assessment. 68 O.S. 1961, § 351. But, assessment of ad valorem taxes places no personal obligation upon the property owner to pay the taxes levied against the property. Allen v. Henshaw, 197 Okl. 123, 168 P.2d 625; McDonald v. Duckworth, 197 Okl. 576, 173 P.2d 436. Although no personal liability for ad valorem taxes is chargeable against the owner, the taxes constitute a continuing lien upon the realty under our ad valorem tax code. Ad valorem taxes are not collectible until due on November 1st of the tax year, and the lien fixed by statute cannot be enforced until the taxes are delinquent. First Nat. Bank of Tulsa v. Scott, 119 Okl. 106, 249 P. 282. And, no delinquency can attach until there is failure to pay at least one-half of the assessed taxes before January 1st of the year following assessment. The construction placed upon state statutes by our highest court is binding upon United States Supreme Court. Oklahoma Tax Comm. v. Magnolia Pet. Co., 336 U.S. 342, 69 S.Ct. 561, 93 L.Ed. 721, rhr. den. 336 U.S. 958, 69 S.Ct. 888, 93 L.Ed. 1111; Oklahoma Tax Comm. v. Texas Co., 336 U.S. 342, 69 S.Ct. 561, 93 L.Ed. 721, rhr. den. 336 U.S. 958, 69 S.Ct. 888, 93 L.Ed. 1111; Hanover F. Ins. Co. v. Harding, 272 U.S. 494, 47 S.Ct. 179, 71 L.Ed. 372; 49 A.L.R. 713.

These principles of law governing Oklahoma ad valorem tax law were recognized in United States v. Oklahoma Nat. Gas Co., (CCA10) 285 F.2d 333, wherein that court also stated:

"* * * But the liability of real property for ad valorem taxes arises as of January 1. Though it may be an inchoate charge on that date which does not mature until the extent of the liability is ascertained by the statutory process, when the amount is ascertained through such process, it relates back to January 1 and continues until it ripens into a statutory lien. In other words, the charge upon the real property in the nature of an in rem liability arises on January 1 and continues until the tax is ascertained in amount, ripens into a statutory lien, and is paid. * * *"

Under Oklahoma law, except for extinguishment by lapse of time under 68 O.S.1961, sec. 362 (re-enacted 68 O.S.Supp. 1965, sec. 24233), only two means are available to avoid or remove the lien of the State for ad valorem taxes: (1) payment of taxes levied when due; (2) discharge of the lien by payment of delinquent taxes, penalties, interest and costs. This record does not disclose whether 1963 taxes against the mortgaged property were delinquent, although it does appear the 1964 taxes were due but not delinquent at the date of sale had in compliance with the trial court's judgment. Because the parties treat both years' taxes as a combined amount, which the mortgagee discharged by payment, we pass over any possible issue relative to the 1964 taxes.

At this point the problem becomes more acute. Under New Britain, supra, the Government's lien must be accorded priority as to any funds in excess of the amount required to satisfy the mortgagee's claim for principal and interest, and the judgment creditor. Under the Government's argument as to application of New Britain, the federal lien should be satisfied from proceeds of the sale ahead of the ad valorem taxes. This, in effect, simply is saying that the proceeds of the sale must discharge the Government's lien to the extent of the amount of ad valorem taxes due against the property, and the mortgagee then must remove the state's lien by payment again of such amount. This claim cannot be squared with the plain language of New Britain, which only requires that any funds in excess of that required to satisfy the mortgagee and judgment creditor is subject to the federal lien. We do not find that the reasoning or rule in New Britain purports to destroy the state's lien which arises by statute. The only excess accruing from the sale was derived from payment of the state's taxes, to remove the lien in the only manner possible under Oklahoma law.

At this point a recent holding in United States v. Brosnan, 363 U.S. 237,

80 S.Ct. 1108, 4 L.Ed.2d 1192, syllabus 1–3, appears applicable:

"1. Federal tax liens are wholly creatures of federal statute.

"3. In determining the extent of the 'property and rights to property' to which a government tax lien attaches under 26 U.S.C. § 6321, the Supreme Court looks to state law."

In Brosnan, supra, although considering a different aspect of lien priorities, the court observed, 80 S.Ct. p. 1116, 4 L.Ed.2d p. 1201:

" * * * In any event, the basic question is not what the existing state of the law was, or even what Congress believed it to be, but whether Congress intended to exclude the application of all state procedures, whatever their existence or effectiveness might be. No such inference can be drawn from the legislative statements referred to."

The instant judgment and order of distribution did not subordinate the Government's tax lien. The order for distribution reserved the proceeds of sale to discharge the mortgage lien and judgment free of all liens. Any excess beyond this amount was reserved for further order of the court. The amount of taxes paid in by the mortgagee, and the additional sum paid to bring the bid within statutory limits in one case, constituted the only funds in excess of the mortgagee's claim. Since the judgment creditor's claim concededly was superior to the Government's lien, the additional amount paid by the mortgagee to provide the statutory bid represented an excess to which the judgment creditor's lien attached. The mortgagee's payment of taxes removed the lien of the state from the property. Being in excess of the amount of principal, interest and costs subject to the mortgagee's lien the amount paid represented an excess fund which was subject to the Government's lien claim, superior to the state's lien for taxes.

Because taxes are not debts but positive acts of the Government created by

statute, they must be enforced as provided by statute. McDonald v. Duckworth, supra; Bell v. Trosper, 182 Okl. 316, 77 P.2d 544; City of Sapulpa v. Land, 101 Okl. 22, 223 P. 640, 35 A.L.R. 72. The state's power to levy taxes extends to all property within the state, unless specifically restrained by federal law. United States v. Hester, 10 Cir., 137 F.2d 145. The mortgagee's payment of these taxes removed the lien of the state for unpaid taxes. That the state's claim upon the funds received was junior and inferior to the federal tax lien was not the mortgagee's concern. The Government could not demand payment of the amount of the taxes determined to be due from the mortgagee, nor release the lien of the taxes against the property. The taxes were legally levied, paid and received in conformity with state law, upon which the Government's rights under the federal tax lien had no effect.

The Government's lien thus could become operative upon actual receipt of the taxes by the official authorized to receive payment. The residue over and above the amount necessary to discharge the liens of the mortgagee and judgment creditor represented funds ordered held by the court clerk to await further order of the court. As to such funds the tax lien of the Federal Government is prior and superior.

■ What has been discussed above clarifies any matter arising from a claim filed by the Oklahoma Employment Security Commission. The filing of tax warrants by the Commission, other than the lien established of record on September 7, 1961, did not give the State the status of a judgment creditor within meaning of section 3672, supra. State ex rel. Oklahoma Employment Security Comm. v. United States, Okl., 266 P.2d 973. The federal tax lien was prior to the claim of the Commission.

■ The other matters argued on appeal concern the trial court's failure to adjudicate the mortgagee's claims for attorneys' fees, abstracting charges and insurance premiums as subordinate to the federal tax lien. By statute attorneys' fees properly are taxed as a part of the costs in an action to enforce a lien upon real property. 12 O.S.1961, § 928; 42 O.S.1961, §§ 5, 176; Marlin v. Williams, 118 Okl. 61, 246 P. 447; Federal Land Bank of Wichita, Kan. v. Denson, 172 Okl. 225, 44 P.2d 891. However, costs are not taxed until the judgment is final. Empire Refg. Co. v. Davis, D.C., 6 F.2d 305. The rule of priority between such items and a federal tax lien is that a mortgagee's lien for attorney's fees is uncertain as to amount and therefore inchoate, and so subordinate to a federal tax lien filed before maturity of a mortgagee's lien for attorneys' fees. United States v. Pioneer American Ins. Co., 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770. Also see annotations 94 A.L.R.2d 748.

■ The items of insurance premiums and abstracting fees claimed by Home Federal were expended by the mortgagee for its own benefit, and subsequent to the date of the federal tax lien so far as this record discloses. Such items could not be included within the costs accrued or accruing, as ordered by the trial court.

■ We purposely avoid consideration of argument that these cases should be reversed and remanded to the trial court with directions to re-sell the properties involved. Neither objections to legality of the foreclosure sales, nor motions to set aside the sales, were interposed, and such matters are not reviewable under motion for new trial. Myers v. Carr, 173 Okl. 335, 47 P.2d 156.

This was an equitable proceeding, and we can render or cause to be rendered the judgment which should have been rendered by the trial court. The judgment in Case No. 41,347 and Case No. 41,349 is affirmed, and the trial court is directed to enter judgment fixing Government's claim under federal tax lien as prior to any liens except those of mortgagee.

HALLEY, C. J., and WILLIAMS, BLACKBIRD and IRWIN, JJ., concur.

JACKSON, V. C. J., and DAVISON, HODGES and LAVENDER, JJ., dissent.